THE FARMERS' INSURANCE AND LOAN COMPANY *vs.* SNYDER.

The *slip*, survey, or *application for insurance*, though referred to in the body of the policy as *more particularly describing the building* containing the goods insured, does not so constitute a part of the policy as to operate as a *warranty*; it is a mere *representation*, and if substantially correct the policy is valid, although one of the *conditions* attached to the policy is, that if the assured shall make *any misrepresentation* the insurance shall be void.

*It seems* that in this respect there is a difference between *marine* and *fire* policies.

To give the effect of a *warranty* to a *slip* referred to in a policy, *it seems* it should be referred to in such a manner as to show that it was *intended* by the parties that it should have such effect.

A *warrantry* on the part of the assured, whether express or implied, is in the nature of a *condition precedent*, and must be *strictly* complied with or the policy is void; not so as to a *representation*, in respect to which the rule is

ALBANY,
Dec. 1836.

Farmers' Ins.
and Loan Co.
v.
Snyder.

that the policy is valid unless the representation is false or mistaken in a matter *material to the risk.*

Whether there has been such a *misrepresentation* as will avoid the policy, is a question for the jury.

ERROR from the supreme court. This was an action on a policy of insurance against fire. Snyder was insured $4000 on his stock of merchandise, consisting of dry goods, groceries, and such goods as are usually kept at a country store, except ardent spirits, " contained in the stone building with shingle roof, occupied by himself and others, situated at, &c. more *particularly described in application and survey furnished by himself, filed No. 938 in the office of the underwriters."* On the trial the defendants, on the call of the plaintiff, produced the *survey*, which is in these words : " Survey of a building at, &c. 56 by 35 feet, built of stone shingle roof, one story high, garret over the whole, *thick stone partition running lengthwise through the building to the roof;* one part occupied by Mr. Snyder, the other by Charles M' Inty as a store-room." The *second condition* attached to the policy is in these words : " If any person insuring any building or goods in this office, shall make any misrepresentation or concealment, or, &c. such insurance shall be void and of no effect." The defendants proved that the *stone partition* was not built higher than the chamber or garret floor, (which floor rested upon the partition wall,) that the side walls of the building upon which the eaves of the roof rested rose five feet above the chamber or garret floor, and that the partition wall did not reach the roof in any part of it. Snyder occupied as a *dry goods store* one side of the building ; the apartment occupied by him *for that purpose,* extending the whole length of the building and being about 18 feet in width ; and he also occupied a room on the other side of the building as a *grocery store,* which communicated with the dry goods store by a passage cut through the partition wall. When the proofs were closed, the counsel for the defendants insisted that the plaintiff was not entitled to recover on the ground of *misrepresentation* as to the building, and prayed the judge so to decide ; and also requested him to decide that the policy and survey, ta-

ken together, constituted a *warranty* that the building was in all respects as it was described in the survey, and that such warranty had been broken, and to charge the jury accordingly : which several applications were overruled by the judge, and the counsel excepted. The judge charged the jury that the *survey* was not such a part of the policy as to become a *warranty*, and that the misdescription of the building in regard to the partition wall was not in itself, in law, a bar to the action ; that the survey was to be considered as a *representation* and not a *warranty*, and it was for the jury to determine whether there was any fraudulent representation or concealment, or whether the risk was increased by the facts and circumstances in regard to which the building was misdescribed. If they found for the plaintiff on those points, they would allow such damages as the evidence warranted, unless they should find that the building was burnt by the fraud of the plaintiff. The defendants excepted to the charge, and the jury found a verdict for the plaintiff for $3452. The defendants applied to the supreme court for a new trial, which was refused, and judgment rendered for the plaintiff. See the opinion delivered in the supreme court, 13 Wendell, 92. The defendants sued out a writ of error. The cause here was argued by

*B. F. Butler*, (attorney general of the United States,) for plaintiffs in error.

*S. Stevens*, for defendant in error.

*Points for plaintiff in error.* I. The motion for a non-suit was improperly overruled for the following reasons, viz : 1. It appears from the testimony produced on the trial, that the building was materially different from the description furnished to the company by the plaintiff, at the time the policy was issued, and which was referred to in the policy. 2. That the policy without the survey, does not set forth the location or identity of the property insured, so as to determine whether it had been burnt or not ; and that, the plaintiff being compelled to resort to the survey or plan furnish-

ALBANY,
Dec. 1836.

Farmers' Ins. and Loan Co.
v.
Snyder.

ed by *himself* to the *company*, and *referred to in the policy* to *show the property insured*, it thus makes a part of the policy, to the same extent as if set forth in the policy at large. 3. That the judge was bound to have decided that the policy and survey constituted a warranty that the building was in all respects as it was described by the *plaintiff* in the survey *furnished by himself;* and which warranty, by reason of the variance and misdescription of the premises, had not been observed, but was broken on the part of the plaintiff; by reason of which he could not sustain the action. 4. That this cause is distinguished from the cases decided, because, in those cases, the survey was not made by the party himself, but *generally* by the agent of the company; and when the property insured was specified in the policy, so as to be identified without further proof. 5. That the plan or description of the premises referred to in the policy, and *produced by the plaintiff* at the trial as a part of his testimony, forms part of the policy, and is to be taken or considered as a part thereof, as much as if it was set forth at length in the policy, and constitutes a warranty that the premises are as stated in the plan or description.

II. The judge should have charged the jury, and directed them if they found the building variant from the description in the survey, that such variance was a breach of the warranty in the policy, and that in such case they were bound to find for the defendants.

III. If the survey is not to be considered as a warranty and forming a part of the policy, then it is a *representation* of the building which appears from the testimony to have been *false*, and as it *was furnished by the plaintiff himself*, by the *second condition* of the policy it renders the policy void, although such misrepresentation would not increase the rate of insurance. In this particular this condition is different from the conditions of the policies in the several cases decided upon that point.

IV. It being apparent from the testimony, and a self evident proposition, that the misdescription altered or varied the risk, and there being no conflicting testimony as to such misdescription, the circuit judge should for that reason, and

considering the survey as merely a representation, have decided that the jury were bound to find for the defendants, and that the policy was void pursuant to the second condition of the policy, or else, for that reason, should have nonsuited the plaintiff.

V. The verdict of the jury is contrary to the evidence on the point of misdescription and variance; and there being no conflicting evidence on that point, the jury should have found that fact in favor of the defendants, even under the rule laid down by the circuit judge.

VI. The defendants are entitled to a new trial for the misdirection of the judge, and because the verdict was contrary to evidence as to the misdescription.

*Points for defendant in error.* I. The survey delivered by the defendant in error to the plaintiffs in error before the policy was executed, was intended to be and *is a mere representation* descriptive of the building containing the goods to be insured. *Pawson* v. *Watson*, Cowp. 785. *Pawson* v. *Ewer ; Pawson* v. *Snell*, Doug. 11, n. 3. *The Jefferson Insurance Company* v. *H. & D. Cotheal*, 7 Wendell, 72. *Delonguemare* v. *The Tradesmen's Insurance Company*, 2 Hall's S. C. R. 589. A survey may be regarded in the light of an answer of the insured, at the time of his application for insurance to a question put by the insurer relative to the condition and situation of the property on which the insurance is requested, preliminary to the consummation of the written contract, and unless *incorporated into the contract either in terms or in substance*, it cannot *per se* form a part of it. *Vandevoort and another* v. *Smith, President of the Columbian Insurance Company*, 2 Caines, 155. It was delivered to and *always held by the insurers*, but even if it had been wrapt up in the policy when executed, or *wafered to it*, it would have retained its original nature—a bare representation. *Pawson* v. *Barnevelt ; Bize* v. *Fletcher*, Doug. 12, 13, n. 4.

II. To constitute the survey or any part of it a warranty, *it must be incorporated in the policy of insurance.* The policy itself is the *only* legal evidence of the agreement be-

tween the parties; and whatever portion of the negotiations or representations between the insurer and the insured, *is not embraced in the policy of insurance itself*, by an insertion in the body of the policy, or by being written on the margin transversely or otherwise, or introduced in some other mode *on the face of the policy* so as to form, by the *manifest consent* of the parties, an essential part of the agreement, *cannot legally be considered a condition precedent, or a warranty. Bean* v. *Stupart*, Doug. 11. *Kenyon and another* v. *Berthon*, id. 11, n. 4. *De Hahn* v. *Hartley*, 1 T. R. 343. *Vandevoort* v. *Smith*, 2 Caines' Ca. 155. *Harris* v. *The Eagle Fire Company*, 5 Johns. R. 368. 6 Wendell, 488. *The Jefferson Ins. Co.* v. *Cotheal*, 7 id. 72. *Dow* v. *Whetten*, 8 id. 160. *Callaghan and others* v. *The Atlantic Insurance Co. of New-York*, 1 Edwards' Ch. R. 64. *Delonguemare* v. *The Tradesmen's Ins. Co.* 2 Hall's S. C. R. 589. *Mellen & Nesmeth* v. *The National Ins. Co.* 1 id. 452. Marshall, 349, 451. 13 Mass. Rep. 96.

III. The distinction between a warranty and a representation has been clearly taken, uniformly sustained, and is thoroughly established. A warranty is of the essence of the contract of insurance, in itself absolutely decisive of the rights of the parties, and must be *literally fulfilled ; a representation is collateral to the contract*, and its controlling power in the determination of the rights of the parties is governed by the circumstance of *fraud, materiality to the risk* and other considerations, and is answered *by a substantial performance. De Hahn* v. *Hartley*, 1 T. R. 343. 6 Wendell, 488. 6 Cowen, 673.

IV. *The reference in the policy to the survey* cannot give it any other or greater efficacy in its legal operation than is inherent in it as a simple representation. 7 Wendell, 72. 2 Hall's Superior Court Reports, 589. It does not in any view, either actually or *virtually*, incorporate the survey into the policy so as to convert it in its legal consequences from a representation to a warranty. Such a construction would be subversive of the intention of the parties as evinced by the insurers *in incorporating so much of the survey into the policy* as they deemed *material to be warranted,*

and by the assured in assuming to fulfil *what was thus inserted in the contract, by a literal compliance.* The very language of the reference indicates that its only object was, to identify the building with greater facility and positive certainty, if that purpose should become necessary. A reference in a principal contract to a collateral paper does not make the paper thus referred to a part of the main agreement, *unless there be an express provision coupled with the reference that such shall be its effect,* as in the case of printed proposals annexed to and always accompanying the policy of insurance. · 1 H. Black. 254. 2 id. 574. 6 T. R. 700, 716. Phil. on Ins. 124. 1 Marsh. 350. 6 Wendell, 488. 6 Cowen, 673.

V. That the survey was procured and furnished by the defendant in error cannot vary its legitimate operation. The insurers required no other survey—they did not cause any other to be made, but adopted the one delivered to them as satisfactory evidence of the risk to be encountered and of the amount of premium to be charged, *It was mutually adopted by the parties as the basis of their agreeement,* and the insurers cannot now, when required to comply with their contract, be permitted *upon any ground* to attach to that survey consequences more injurious to the defendant in error than it was contemplated to produce when the insurance was affected.

VI. The description of the building *as contained in the policy,* and therefore warranted, was fully sustained.

VII. There was an *equitable, substantial compliance with the representation.* Cowper, 785. 1 Ryan & Moody, 92, 4th ed. 590. 2 N. Y. Term Rep. 222. The fact misrepresented was *not material to the risk;* the knowledge of the true state of the stone partition *could not have enhanced the premium,* and there is no proof in the case that the fire originated in that part of the building which would have been affected in any manner, had the partition rose to the roof.

VIII. A misrepresentation, to affect the right of recovery, though it be *fraudulent* must also be material *to the risk,* *McDowal* v. *Fraser,* Doug. 260. 5 Taunt. 430. 1 Peters' Rep. 188. 2 id. 25. 5 Cranch, 100. Hughes, 501. Park,

648.  9 Barn. & Cress. 693.  4 Mass. Rep. 330.  2 Caines, 25.  It is not pretended that the defendant in error knew the actual state of the partition, and the surveyor swears that he was ignorant of all fraud.  In the absence of proof of knowledge by the defendant in error, of the height of the partition, *a fraudulent concealment* cannot be imputed to him.

IX.  Whether a representation be false or fraudulent, and if false and fraudulent, be material or immaterial to the risk, *is a question solely and exclusively for the consideration of a jury*.  Park on Ins. 273, 274.  4 Bos. & Pul. 151.  13 East, 47.  *Linderman* v. *Desborough*, 8 B. & Cress. 586.  *Harrat* v. *Wise*, 9 B. & C. 712.  12 Johns. Rep. 513.

The jury having passed upon this question, under a proper charge from the court, and having found *that the misrepresentation, as evidenced between the proof and the survey, was not material to the risk*, it cannot admit of further controversey, and whether the finding of the jury upon the evidence was right or wrong, cannot be questioned upon a bill of exceptions.

The following opinion was delivered :

By the Chancellor.  The principle is well settled that every warranty on the part of the assured, whether express or implied, is in the nature of a condition precedent to the payment of the loss, and must be strictly complied with, or the policy is void.  In this respect there is a material difference between a warranty and a representation ; which latter is a matter of collateral information or intelligence relative to the subject and nature of the risk to be assumed, which in itself must have been calculated to increase the responsibility of the underwriter, or to have induced him to assume the risk for a smaller premium than he would otherwise have required.  In other words, it must be a misrepresentation of a matter material to the risk, either designed or otherwise.  This is the legal and commercial meaning of the term *misrepresentation*, as used in the second condition annexed to the policy in this case ; which declares that if any person insuring a building or goods in the office

of the company shall make any misrepresentation or con-
cealment, or if after the expiration of the policy and before
the renewal thereof the risk shall be increased by any means
within the control of the assured, or if such buildings or
premises shall be occupied in any way so as to render the
risk more hazardous than at the time of insuring, the insur-
ance shall be void. The question was therefore properly
submitted to the jury to decide, as a matter of fact, whether
there was a fraudulent misrepresentation or concealment in
the survey, or an increase of the risk or hazard by the facts
and circumstances in which the building varied from the de-
scription in the survey. I do not understand the survey on
its face as calculated to convey to the underwriters the im-
pression that the stone partition extended up through the
garret to the highest point of the roof, so as to divide the
garret, as well as the other part of the building, into two
distinct and separate apartments—as that would be not only
a very unusual way of building, but would be inconsistent
with another specification in the survey, to wit, that there
was a garret extending over the whole building. This part
of the description certainly could not have been intended to
convey to the underwriters the information that a one story
building with a roof of shingles had a vacant space between
the ceiling of the rooms below and the roof, as that was a
fact that must be known to every body who ever saw a
building with a shingled roof; but this description was intend-
ed to convey to the insurers the information that there was
a room usually called a garret, and capable of being occu-
pied as such, over the whole of the one story building of 56
feet by 35. The only error in the description, therefore,
was in inducing the underwriters to suppose that the wall
which ran lengthwise through the building and as high up
as the garret floor, was also as high as the roof or eaves of
the building; that is, that the top of the walls, or the plates
upon which the lower part of the roof rested, were on a
level with the garret floor, and with the top of the stone
partition on which it also rested. In this there was undoubt
edly a misrepresentation, or rather a mistaken description;

ALBANY,
Dec. 1836.

Farmers' Ins.
and Loan Co
v.
Snyder.

as the walls or plates upon which the lower part of the roof rested were several feet above the garret floor and partition wall. But I cannot see how that mistake of the surveyor, which is accounted for by him from the circumstance that he did not go above the garret floor to look, there being some temporary difficulty which prevented him from doing so, could have altered the risk assumed by these underwriters, to their prejudice. Neither do I believe, in point of fact, that the circumstance of the partition wall, and the garret floor which rested upon it, being a few feet lower than the roof, would ever have induced any underwriter to decline the risk or to have increased the premium upon the policy. It is a well known fact, and which also appears from the proposals annexed to this policy, that fire insurance companies in this state make a general classification of hazards in reference to the materials and construction of the buildings insured, or in which the subject matter of the insurance is deposited or kept, and in reference to their location and the manner in which they are occupied, and that their rates of premium are usually regulated accordingly. A false or mistaken representation, therefore, from which the underwriters might be induced to suppose the risk belonged to a lower instead of a higher class of hazard, would, if caused by the fraud or even mistake of the assured or his agent, be sufficient to avoid the policy; but in reference to all matters of minor importance, such as whether the building is a few feet more or less from an adjacent building, or whether the rooms, partitions, stair cases, &c. are precisely as stated by the party insured, it must always be a mere question of fact to be determined by the jury whether the misrepresentation was fraudulent or materially varied the nature of the risk, to the prejudice of the insurer; unless the underwriter thinks proper to put it in the shape of a warranty, and thus make it a part of the contract that the assured shall not be paid his loss if there is any, even an unessential variance from the description of the property or its location as to other contiguous buildings, &c. In the present case the verdict of the jury upon the questions submitted to them by the judge was warranted by the evidence,

and established the fact that there was no fraud, misrepre-
sentation or concealment which ought to avoid the policy
either upon the general principles of law relative to misre-
presentation or concealment, or by the terms of the second
condition of the proposals referred to in the body of the
contract; which second condition, in this respect, is only an
embodying of the settled principle of law on the subject of
misrepresentation and concealment in the conditions upon
which the insurances of the company are to be made.
Where the representation is material, it must be substan-
tially correct, although it need not be literally and mathe-
matically accurate in every particular. If there is a mis-
representation in relation to an immaterial matter, it does
not affect the validity of the contract, especially where,
as in this case, it was made by mistake and without any in-
tention to deceive or defraud the underwriters. Such be-
ing the construction which this company undoubtedly intend-
ed should be put upon this clause in the conditions annexed
to the policy, this part of the conditions of their proposals
for insurance was perfectly right and proper on the part of
the company, (although the law itself would have protected
their rights to the same extent,) as this condition was calcu-
lated to put the person applying for insurance upon his
guard in relation to any representations which he might
make, so that he might be careful to have them substantial-
ly correct. But if the company had expected and intended
that a construction would be put upon this clause of the con-
dition which should render the policy void if the assured,
who resided out of the city, happened to make a mistaken
representation in reference to the situation of the property
intended to be insured in any unimportant particular, al-
though it did not materially vary the risk, the clause would
operate as a fraud upon the assured; as the officers of the
corporation must have known that not one survey in ten
from the country would have been literally and mathemati-
cally accurate in every respect.

Having disposed of this part of the case, it remains for
me to consider the question whether the reference to the
survey in the body of this policy, and which, I believe, is

ALBANY,
Dec. 1836.

Farmer's Ins.
and Loan Co.
. v.
Snyder.

usually referred to in fire policies in the same way, is to have the same effect as a warranty contained in a marine insurance, so as to render the policy void if the description in the survey is not perfectly accurate in every particular; or whether the survey thus referred to ought to be considered as a representation or description of the property insured, or of the building in which it is deposited or kept, and binding upon the assured as a representation if furnished by him or his agent, and not by the agent of the company. A marine policy is anomalous in form, though in other respects it is to receive the same construction as other contracts. Hence it has been correctly held that a stipulation, or clause or memorandum, as it is sometimes called, although written in the *margin*, on the *back*, or on any other part of the same paper, if made before or at the time of the underwriting of the policy, and intended as a part thereof, is considered as a part of the contract itself in the same manner as if it had been inserted in its proper place, in the form of a stipulation or agreement, in the body of the policy. This accounts for the different decisions of Lord Mansfield in the cases of *Bean* v. *Stupart*, 1 Dougl. Rep. 11, and *Kenyon* v. *Berthon*, referred to in a note to the last case, in both of which he held stipulations written upon the policy itself as strict warranties, and in the cases of *Pawson* v. *Barnevelt*, and *Bize* v. *Fletcher*, referred to in the same note; in the first of which he held that a written memorandum inclosed in the policy, and shown to the underwriter at the time of his signature, was not a strict warranty, but a representation merely; and in the last he held the same as to a memorandum, upon a separate piece of paper, but which was actually attached to the policy by a wafer at the time the policy was underwritten. I have no doubt that it is perfectly competent for the underwriter, by the insertion of a stipulation to that effect in the policy itself, to give to a statement of facts contained in a separate paper or instrument, sufficiently referred to and identified, all the effect of an express warranty inserted in the body of the policy. But in the anomalous and informal instrument called a marine policy, many things have been con

strued into express warranties, which, if found in other contracts, would be perfectly unintelligible, or would be considered as immaterial matters ; and the cases above referred to show that the principle of converting every thing contained in a policy into an express warranty, although there is nothing in the form of the memorandum itself to show that such was the intention of the parties to the contract, is not to be extended to any memorandum or paper writing not contained in the policy itself, or written upon the same paper with the policy so as to be considered as contained therein.  This I take to be the settled law at this time in relation to *marine insurances ;* but I confess I have doubts whether the principle of construing every matter of mere description contained in the body of the policy, although not material to the risk, into an express warranty which is to be literally complied with, should be applied with the same strictness to *fire policies,* where the misdescription is most generally the mistake of the underwriter's own surveyor.  In the present case, however, even if we test the construction of this policy by these settled principles of marine insurance law, it will be found that there is no misdescription of the building in the policy itself, or in any stipulation, clause, or memorandum written or printed on the same paper therewith.  Neither is the survey, furnished by the assured, referred to in this policy in such a manner as to show clearly that the assured was to be considered as warranting that every thing contained in that survey was literally and mathematically correct; and as there was neither a warranty, or a misrepresentation material to the risk assumed by the underwriters, they were properly chargeable with the loss.  The judgment should, therefore, be affirmed.

On the question being put, *Shall this judgment be reversed?*  All the members of the court present, twenty-three in number, voted in the negative.

Whereupon the judgment of the supreme court was AF-FIRMED.