HUNTLEY, receiver &c.. *vs.* PERRY.

A policy of insurance is not rendered absolutely *void* by the omission of the assured to specify in his application, all the buildings within ten rods of the insured property, but it is merely *voidable* at the election of the company. GROVER, J. dissented.

After the company has chosen to assert the validity of the policy, by bringing an action upon the premium note, to recover an assessment, the insured cannot be permitted to set up the falsity of his own statements, in the application, as a defense.

THIS action was brought by the plaintiff, as receiver of the Cattaraugus Mutual Insurance Company, upon a premium note given for a policy of insurance issued by that company. The note, application and policy bore date December 6, 1854. The action came on to be tried at the Cattaraugus circuit in January, 1860, before Mr. Justice GROVER and a jury. The plaintiff proved the facts entitling him *prima facie* to recover. The defendant proved the execution of the application, (which by the terms of the policy formed a part of it,) containing in substance a statement that all buildings within ten rods of the insured property were mentioned in it; and then offered to show that the buildings of three persons, which were situated within less

than ten rods, were not mentioned in the application, and that the omission to mention them was not willful or fraudulent. The evidence was admitted by the court, and the plaintiff duly excepted.

The court charged the jury "that the fact that there were other buildings that were not mentioned in the defendant's application for insurance, within ten rods of the house insured, rendered the premium note, upon which the plaintiff had brought his action, void." To this charge the plaintiff duly excepted. The jury rendered a verdict for the defendant; and the exceptions were ordered to be heard at the general term, in the first instance.

*Lamb & Huntley,* for the plaintiff.

*C. C. Torrance,* for the defendant.

*By the Court,* DAVIS, J. The question to be passed upon in this case arises upon the charge of the court, which was "that the fact that there were other buildings that were not mentioned in the defendant's application for insurance, within ten rods of the house insured, rendered the premium note void." The application set forth in the answer and proved on the trial, is a complete instrument on its face. It purports to state the relative situation of the property insured, "as to other buildings, and the distance from each within ten rods," and that all buildings within ten rods are mentioned, and that there is nothing whatever in it to indicate that it does not do so. This application was made and subscribed by the insured, and is, as it professes to be, *his statement* of the facts required by the company. It was received by the company in good faith, and acted upon by its officers in conformity to its by-laws, and a policy thereon issued to the defendant. The application, premium note and policy were all dated the 6th of December, 1854; and so far as the case shows, have been regarded by both parties as valid instru-

ments, until the defendant was called upon in this action to pay the assessment on his premium note. It does not appear that at any time during this period the insured has disclosed the fact to the company that he had omitted to state that other buildings existed within ten rods, or that the company became apprised of it in any other way.

It has been held that the answer of the applicant to an interrogatory in an application like this, is an express warranty that there are no other buildings within ten rods, than those mentioned by him. (*Chaffee* v. *The Cat. Mutual Ins. Co.*, 18 *N. Y. Rep.* 376.) And a warranty in relation to the situation of the property is a condition precedent, and unless substantially true the policy will be void. (*Id.* 2 *Comst.* 221. 16 *Wend.* 481, *and cases cited.* 18 *N. Y. Rep.* 378.) But it is also well settled that the company may waive the conditions of assurance, and if they do so with knowledge of the facts they are estopped from denying the validity of the policy. (*Ames* v. *The Union Ins. Co.*, 14 *N. Y. Rep.* 254, 256. *Frost* v. *Saratoga Ins. Co.*, 5 *Denio*, 154. *Viall* v. *The Genesee Mutual*, 19 *Barb.* 440. *Risley* v. *The Chaut. Co. Mut. Ins. Co.*, *MS. opin.* 8 *dist.*)

In *Frost* v. *The Saratoga Mutual Insurance Company*, the action was brought upon the policy after a loss. The company showed that the application omitted to state buildings within ten rods, as required by the conditions of the insurance; but it appeared that the company, with full knowledge of the omission and of the facts of the case, had afterward made and collected assessments upon the premium note, and the court held that the company had by this act affirmed the validity of the policy, and could not be heard to dispute it.

In *Risley* v. *The Chautauque Company*, this court held that the making and collection of assessments, after notice of the facts, was a waiver of conditions precedent, and subjected the company to pay a subsequent loss, although the

policy was originally void within the well settled cases, if the company had chosen so to regard it.

The language used by the cases is that the policy is void; but to my mind it is quite clear that nothing farther is meant by this expression than that it is voidable if the company choose so to regard it. The cases just cited establish that the policy is capable of being made valid by the act or agreement of the company, after the facts which avoid it shall have come to their knowledge; and these cases satisfactorily establish that the policy is to be regarded rather as voidable at the election of the company than as absolutely void, whether they choose so to regard it or not. Those cases settle that if the fact, that the defendant had omitted the buildings now shown to have been left out, had come to the knowledge of the company, they would have had their option to have treated the policy as a valid or as a void one; and in the former case would have themselves been estopped from afterward questioning its validity. In my opinion, therefore, the defendant is not at liberty to assert the misrepresentations of his own application as a defense to his note. The company chose, by their action, to assert its validity. The payment of his assessment, which is according to the express terms of his agreement, secures to the insured a valid insurance, and after the collection of the assessment upon this note the company cannot be heard to dispute their liability for any loss he may sustain. The company have been at all times since the making of the application, and the issuing of the policy, in a position to have ratified and rendered valid the policy, upon a disclosure of the facts, by a waiver of the condition, and that this has not before been done, is the fault of the insured rather than of the company. The election, in my judgment, was with them; and the defendant has neither reason nor right to complain at their so exercising it as to subject him and themselves to the liabilities which both parties intended to incur.

I am not able to see, also, why the insured in such a case

is not estopped from setting up such a defense. His representation in writing is perfect upon its face. It is made with intent to induce the company to act upon it, and issue their policy to him. The company, relying upon the representations it contained, did act upon it and issue their policy to him. This action is necessarily to their prejudice, for although they may avoid their policy by proving the warranty false, yet they take upon themselves the burthen of doing so by issuing an obligation which is prima facie binding upon them. The insured has, therefore, by his own act, led them into a position where they must pay his losses or prove his misrepresentations. And by this act he is the gainer, for he has secured a policy on terms which must be presumed to be more favorable than would have been granted had the facts been known and truly stated. Now shall he be permitted to set up his own misrepresentation as a defense, where the company are asserting the validity of the policy and seeking to enforce the consideration he agreed to pay for it? Under such circumstances, I think, the defendant should not be permitted to assert the falsity of his own statements upon which the company have in good faith acted; although he may have made the statements by mistake or accident. "It makes no difference in the operation of this rule whether the thing admitted was true or false, it being the fact that it has been acted upon that renders it conclusive." (1 *Greenl. Ev.* §§ 208, 209. *Frost* v. *Saratoga Mutual,* 5 *Denio,* 158.) The case is brought, in my opinion, within the careful rule laid down by Bronson, J. in his dissenting opinion in *Dezell* v. *Odell,* (3 *Hill,* 220.) "Before the party is concluded, it must appear," he says, "1. That he has made an admission which is clearly inconsistent with the evidence he proposes to give, or the title or claim he proposes to set up. 2. That the other party has acted upon the admission; and 3. That he will be injured by allowing the truth of the admission to be disproved."

The defendant made his admission in the form of a solemn

statement, which the law adjudges to be an express warranty of existing facts. 2. The company, believing and relying upon that statement, acted upon it; and 3. They will now be injured by allowing the insured to assert the falsity of his statement.

To hold that the defense relied upon is a valid one, would throw doubt and insecurity over all the obligations held by the mutual insurance companies of the state. Their premium notes will cease to be of value as securities if every maker may resist their payment by the assertion of his own wrong, in concealing or misrepresenting the facts relative to his property.

There should be a new trial in this case, with costs to abide the event.

MARVIN, J. concurred.

GROVER, J. dissented.

New trial ordered.

[ERIE GENERAL TERM, May 14, 1860. *Marvin, Davis* and *Grover*, Justices.]