## KNICKERBOCKER LIFE INS. CO., *v.* HEIDEL.

1. DAMAGES. *Contract.* In simple breaches of contract, the contract itsef must give the measure of damages, and a jury would not be warranted in estimating the damages as in an action of tort or *quasi* tort.

2. LIFE INSURANCE. *Damages.* The contract of life insurance is based upon statistics, and governed by settled rules, and the damages resulting from a breach thereof by the insurer, admit of being ascertained with unusual accuracy.

3. SAME. *Same. Reserve fund.* A part of every premium paid on a life policy is absorbed in the running expenses of the business; a part is the compensation of the insurers for the risk during the period for which the premium is paid, to be used in the payment of losses on other policies or divided as profits; and the remainder is accumulated on interest as a reserved fund to respond to the demand of the particular policy, and constitutes its equitable value. Damages are not allowable beyond such value for the breach of a stipulation to rereturn a fair proportion of the premiums, if applied for before the policy expires.

4. SAME. *Prospectus not part of contract.* A prospectus of an insurance company is not made a part of the policy by an endorsement on the policy that it may be had *gratis*, and its statements would only be representations, not parts of the contract.

5. SAME. *Entire contract. Non-payment of premiums.* A contract of insurance for life is an entire contract, subject to discontinuance and forfeiture for non-payment of premiums, and subsequent representations

Insurance Co. *v.* Heidel.

of the officers or agents of the insurance company, or subsequent prom-
ises or agreements not based upon a new consideration, will not enter
into the original contract.

FROM DAVIDSON.

Appeal in error from the Circuit Court of David-
son County. N. BAXTER, J.

R. McPHAIL SMITH for Ins. Co.

JOHN RUHM for Heidel.

COOPER, J., delivered the opinion of the court.

On May 7, 1866, William Heidel took from the
Knickerbocker Life Insurance Company a participating
policy on his life for $5000, payable upon his death
to Rosalie Heidel, his wife, at an annual premium of
$153,20, one-half in cash, and the other half by note.
The premium was paid and secured as required each
year up to May 7, 1875, included. On May 3, 1876,
Heidel, in the name of himself and wife, wrote to
the company that he wished to cancel the policy, and
requested the company to notify him, if he desired a
return of premium under a clause in the conditions on
the back of the policy, how much it would pay; or,
if he preferred a paid up policy, for what amount the
company would issue it. The company replied, stating
terms, which were not satisfactory. And on August
19, 1876, this action was brought. The case was
tried by a jury, and verdict and judgment rendered
for plaintiff. Defendant appealed in error.

The declaration contained four counts. The first

count is for money received. The second count is for
money "wrongfully, oppressively, fraudluently and deceit-
fully, and under fraudulent promises, guarantees and
representations, received and collected from the plain-
tiff by the defendant without just cause or considera-
tion." The third count is in substance the same, only
specifying in addition that the money was collected
from the 7th of May, 1866, to the 7th of May, 1876.
The fourth count sets out the contract between the
plaintiff and defendant, and the taking out of the policy,
and avers that the plaintiff has complied with his part
of the contract, and the defendant has failed and re-
fused to comply with its promises in the following
particulars:

1st. It has not cancelled the premium notes as it
fraudulently promised to do, which promise was one of
the inducements to the plaintiff's entering into the
contract, and executing the notes.

2. It has refused to return the plaintiff any part
of the premium paid, although applied to for the pur-
pose, before the policy expired.

3. It refuses to issue the plaintiff or his wife a
paid up policy for the amount or value of the pre-
miums already paid, although requested.

The only evidence introduced by the plaintiff be-
low on the trial, consisted of his own deposition, and
the exhibits thereto, viz, the policy, the annual state-
ment of accounts furnished by the company to plain-
tiff, the plaintiff's notes and written acknowledgments
in relation thereto, the several receipts of the compa-
ny, and some extracts from a prospectus of the com-

Insurance Co. *v.* Heidel.

pany which was furnished to plaintiff about the time the policy was taken out.

The plaintiff testified that the agent of the company had represented to him, as an inducement to insure, that the dividends of the company in the past had paid the premium notes, and in the future would do the same thing; and that the cash payments would decrease every year. The prospectus also stated that the dividends for the last decade had averaged 72 per cent.; that they had, at no time, been less than 45 per cent.; and that they had always covered the amount of the premium notes.

One of the conditions on the back of the policy was the following: "In case the holder of this policy wishes to cancel it after three annual premiums have been paid, a fair proportion of the premiums will be returned, if applied for before the policy has expired." The application by letter was proved as hereinbefore stated.

The prospectus of the company contained this provision: "Not a single policy is rendered invalid, if, at the non-payment of the premium, the assured applies to the company for a paid up policy to the amount of payments already made."

The charge of the trial judge makes no direct reference to the pleadings. It recites, however, the substance of the fourth count in stating the contract claimed by the plaintiff to have been made, and the breaches complained of. It plainly proceeds, moroever, upon the hypothesis that the plaintiff is suing, both for a breach of the contract, and for the recovery of the money

paid by him, upon the ground that the contract was avoided *ab initio* by the fraud of the defendant. For, he says: "If the defendant by fraud induced the plaintiff to pay his money, the contract was void from the beginning, and the plaintiff is entitled to recover back the money he has paid, and interest, if you think he ought to have interest. If you find that there was no fraud, but that defendant has broken its contract, the plaintiff would be entitled to such damages as he has sustained by the breach of the contract.". The learned counsel of the appellee necessarily concedes the fact in his able argument, and says that it is plain to him that the jury went off on the judge's second alternative, viz, "that the plaintiff in error was liable for breach of contract in refusing to return a fair amount of the cash premium paid, and. in refusing to issue a paid up policy." His Honor, the trial judge, does reci e in full the three breaches relied on in the fourth count of the declaration, namely, to repeat them in short: 1st. That the company had not cancelled the premium notes. 2d. That it refused to return any part of the cash premiums paid. 3d. That it refused to issue a paid up policy. The averments of fact in the declaration and the proof on which the first of these breaches rests, the trial judge treats as representations, only bearing on the question of fraud which will avoid the contract *ab initio*. The other two breaches he treats as based on the contract, on which the plaintiff is entitled to the alternative relief of damages for the breach, if the promises were made in good faith and not fraudulently. "With regard to the other rep-

resentations and promises," he says after disposing of the first of the above breaches, " if you believe they were made, and made *bona fide,* with the intent at the time they were made to perform them in good faith, but afterwards the defendant became unable to perform them, or changed its mind and refused to perform them, that would not be fraud, but a mere breach of contract."

It will be seen that his Honor's charge is open to the criticism of the counsel of the plaintiff in error, that upon a count in contract, the question is submitted whether that contract is not void *ab initio.* And the count itself, it must be admitted, is so worded as to admit of the double construction.   But, in the absence of any objection to the count in the declaration on this particular ground in the court below, the plaintiff's counsel is justified in treating it as in contract, and in referring the language of the trial judge in relation to the avoiding of the contract *ab initio* to the other counts in the declaration.

In this view, and considering the verdict as based upon the breach of contract, the first question which arises is, whether the jury were governed by the proper measure of damages in their verdict.   They received on the point no assistance from the testimony or the court.   For his Honor simply said to them: " If you find there was no fraud, but that defendant has broken its contract, the plaintiff would be entitled to recover such damages as he has sustained by the breach of the contract."   And he refused to allow the company to prove, by an insurance agent of several

year's experience, what was a fair premium per annum for carrying the risk of $5000 on a life policy, and what should be the balance payable in the form of a paid up policy after carrying the risk for ten years. If, however, the verdict of the jury were for the proper amount in view of the nature of the contract and the breaches complained of, we would not be inclined to interfere with it, merely because of the want of testimony or of proper instructions as to the damages.

The policy was for $5000, in consideration of an annual premium of $153,20. The total amount of premium paid from May 7, 1866, when the policy was issued, to the 3d of May, 1877, when the demand of a return of premium was made, would be $1532, of which $529 were in the note of the defendant in error, and $213 had been returned in dividends. The verdict could only have been, under the charge, for a fair proportion of the premium, or for the value of a paid up policy based on the payments made, less the outstanding note, and the dividend If we deduct the note and the dividend from the total of the premiums, the remainder will be $790. And if we add to this sum interest from May 3, 1876, to March 15, 1877, when the verdict was rendered, the aggregate will be about $836. But the verdict was for $1257, and was for too much, in any conceivable view.

The learned counsel for the defendant in error argues that the jury are the proper judges of damages, and that the court will not disturb their verdict, when

there is no certain measure of damages, unless it is flagrantly extravagant. But it has long been settled in this State that it is in actions founded on torts, or *quasi* torts, that the jury must have the latitude and discretion contended for, there being in such cases no certain means by which the court can say what the damages ought to be. In simple breaches of contract the rule is different, for there the nature of the contract usually admits of the establishment of certainty and precision: *Headrick* v. *Stewart*, 1 Tenn., 476; *McWhirter* v. *Douglass*, 1 Cold., 592. The contract itself must give the measure of damages, and if it fails to do so the damages can only be nominal: *State* v. *Ward*, 9 Heisk., 100, 132. The contract of life insurance is based upon statistics, and governed by well settled rules, and the damages resulting from a breach thereof admits of being worked out with unusual accuracy. The assured, especially in a participating policy, becomes an associate with others in a common enterprise, and must bear his share of the joint risk. The annual premiums are not the consideration for the insurance for the particular year, but the graduated rate in view of the entire duration of the policy. The graduated rate increases as the insured advances in years, and the difference between the rate at one age and the rate at a later period constitutes the equitable value of the earlier policy. A well managed company will lay up out of the premiums paid a reserved fund to cover the increase in the rate, and to meet the payment of the policy when it matures. It is this equitable value that the companies usually

agree to pay in settlement during the life of the policy; *New York Life Ins. Co.*, v. *Statham*, 93 U. S., 24. To repay to the assured all that he has paid in, if, at any time during the life of the policy, he demanded a return of a fair proportion of the premiums, would not be in accordance with the contract, and would be manifestly unjust. A part of each premium paid has been absorbed in the running expenses of the company. Another part became the property of the insurer as compensation for the risk during the period for which it was paid, and was applied in the payment of losses on other policies, or returned to the policy holder in dividends. It is only the remainder which is accumulated on interest to respond to the demand of the particular policy. The verdict in this case goes far beyond any just claim which the defendant in error may have for the breach of contract sued on.

The trial judge, as we have seen, treats the "representations or promises," upon which the last two breaches of the declaration are based, as parts of the contract, and charges the jury that if they were made without fraud, a subsequent failure to comply with them would constitute breaches of contract, to be looked to in estimating the damages. The condition on the back of the policy to return a fair proportion of the premium paid is a part of the contract. But there is no provision of the policy, nor of the conditions annexed for the issuance to the plaintiff or his wife of a paid up policy for any portion of the premiums. There is no proof of any stipulation to that effect between the parties, even if parol proof were admissible

to change the contract.    It is the prospectus which contains the clause relied on.    The statements of the prospectus, unless made a part of the contract, would merely be representations, like the representations in relation to the dividends, and could only be looked to on the question of the fraud which would avoid the contract.    The reference to the prospectus on the back of the policy would not change the result, for the obvious reason that it does not show an intent that the prospectus should form a part of the contract.    The language is:  "The prospectus of the company may be had gratis by applying at either the principal office or to any of the agents:"    *Ruse* v. *Mutual Benefit Life Ins. Co.*, 23 N. Y., 516 ;  *Farmer's Ins. & Loan Co.*, v. *Snyder*, 16 Wend., 481 ;  *Burritt* v. *Saratoga County Mutual Fire Ins. Co.*, 5 Hill, 188.

The trial judge, upon the request of the defendant in error, charged as follows :  "The contract of life insurance, entered into between these parties, was a continuous contract, that is, one to be ratified and confirmed annually, or one that may be rejected by the non-payment of premiums.    It follows, therefore, that representations, promises or agreements, made subsequently to the original contract, either orally or by written or printed statements, enter into the contract, the same, and under the same principles and conditions as the original representations, and the original policy."    But the idea that the contract of life insurance was continuous from year to year was treated by the Supreme Court of the United States as "the suggestion

of ingenious counsel." The contract is not an assurance for a single year, with a privilege of renewal from year to year by paying the annual premium, but it is an entire contract of assurance for life, subject to discontinuance and forfeiture for non-payment of any of the stipulated provisions: *New York Life Ins. Co.*, v. *Statham*, 93 U. S., 30; *Cohen* v. *New York Mut. Life Ins. Co.*, 50 N. Y., 610. If, therefore, his Honor, the trial judge, meant, as the words seem to imply, that representations made subsequently to the original contract by the agents or officers of the insurance company, or any promises or agreements not based upon a new consideration, would enter into the original contract, he was clearly in error.

No question was made in the court below upon the right of the defendant in error to sue in his own name upon the contract embodied in a policy of insurance on his life taken out for the benefit of his wife, under Code, sec. 2478: *Southern Life Ins. Co.*, v. *Booker*, 9 Heisk., 606, 618. Nor was {any point made upon the right of the defendant in error to avoid the contract by a suit to which his wife was no party: *North · Am. Ins. Co.* v. *Wilson*, 111 Mass., 542; *United States Life Ins. Co.* v. *Wright*, 8 Ins. L. J., 169; *Martin* v. *Ætna Life ' Ins. Co.* 2 Leg. Rep. 87.

The charge of the court is, moreover, altogether silent upon the effect of the annual renewals of the policy for so many years in waiving any fraud in the original transaction, and ratifying the contract. These omissions might not of themselves authorize a re-

versal in the absence of any action in the court below on the part of the plaintiff in error calling the attention of the judge to them, but they make us better satisfied with the result reached.

Reverse, and remand for another trial.