### RACT *v.* DUVIARD-DIME.

*(Supreme Court, General Term, First Department.* January 28, 1889.)

**1. PRINCIPAL AND AGENT—EXTENT OF AGENCY—EVIDENCE.**

Defendant was a manufacturer in France, and shipped goods to plaintiff, or to customers ordering through plaintiff, in America. Plaintiff sued for commissions as well on the goods shipped directly to and sold by him as on those ordered by and shipped to customers obtained by him. According to his evidence, the contract en-

titled him to such commissions, but the testimony of defendant, and of an agent of the latter, was directly at variance with his statement. Annual accounts of their transactions were sent by defendant to plaintiff, and retained by him without objection, which corroborated defendant. During their business relations defendant wrote letters to plaintiff, referring to him as defendant's "agent," but they did not indicate the extent of his agency, and were consistent with defendant's theory that the agency extended only to the goods ordered for others. The goods sent directly to plaintiff were charged at a low price, and he was at liberty to sell at whatever he could obtain, the advance being entirely for his benefit, though he was at liberty to return unsold goods, their value being credited on the purchase price. *Held,* that the referee was justified in finding that plaintiff was entitled to no commissions on goods shipped directly to him.

2. SAME—TERMINATION OF AGENCY.

Defendant, having terminated his engagement with plaintiff, as he had the right to do, is not liable to plaintiff for commissions on orders sent him afterwards, in the absence of any agreement to fill such orders.

3. APPEAL—REVIEW—WEIGHT OF EVIDENCE.

Plaintiff's claim for a yearly salary being also supported only by his own testimony, which was contradicted by that of defendant and his agent, as well as by the yearly statements of account mentioned, a finding by the referee for defendant on that issue is warranted by the evidence.

4. ACCOUNT STATED—IMPEACHMENT FOR MISTAKE.

Of the goods shipped by defendant to plaintiff, several lots were seized by the custom officers for violation of the revenue laws, and plaintiff had to pay sums by way of penalties, increase of duties, etc., to effect their release. The misconduct of defendant's employes in putting uninvoiced goods in the packages, for which plaintiff was not responsible, occasioned the expense. By an error this expense was included in an account stated between the parties at a less sum than the actual amount. *Held,* that the plaintiff should, on proof of such mistake, be allowed the correct amount, as the effect of an account stated may be avoided by showing a mistake therein.

5. SALE—SEIZURE AT CUSTOM-HOUSE—LIABILITY OF SELLER.

Defendant is not liable for the cost of obtaining the release of goods shipped to plaintiff as his goods, and seized by the revenue officers on the ground of under-valuation, when it appears that other such goods, similarly valued, had been repeatedly passed without objection, and that they were not in fact under-valued, especially when plaintiff seems at the time to have acquiesced in defendant's proposition to pay only the expense of obtaining the release of the portion of the shipment intended to fill orders from customers.

6. WITNESS—CREDIBILITY—INTEREST IN ACTION.

The evidence of a plaintiff may be discredited on account of his interest in the result, though uncontradicted, and a referee is therefore justified in disallowing items of an account supported only by his testimony.

Appeal from judgment on report of referee.

Action for damages for breach of contract by Jean Joseph Ract against Eugene Duviard-Dime. Judgment for defendant for $2,921.72, with costs and allowance. Plaintiff appeals, both from the judgment and an order of the special term directing the taxation of costs. The opinion on the latter appeal may be found *post,* 161.

Argued before VAN BRUNT, P. J., and BARTLETT and DANIELS, JJ.

*Emile Beneville, (Paul Fuller,* of counsel,) for appellant. *Baldwin & Blackmar,* for respondent.

DANIELS, J The plaintiff has prosecuted this action against the defendant to recover commissions alleged to be unpaid to him on the sale of merchandise, and for various expenditures made in and about the business which it is alleged was carried on and transacted by him for the defendant, and also for a yearly salary for his services. They commenced in the year 1874, and continued into the end of the year 1879. The defendant was a manufacturer of the goods in which the dealings took place, and carried on business at Lyons, in France. The plaintiff obtained orders in the United States and Canada for the sale of such goods by the defendant, and also ordered and received goods which he sold and delivered to his own customers. There was no controversy in the case as to the amount of goods which had been shipped and delivered by the defendant, or of the remittances made by the plaintiff to him. Neither

was there as to the quantity of goods on hand at the time when the business was terminated, in 1879, and which were returned by the plaintiff to the agent of the defendant. But what the plaintiff in part insisted upon was that he was entitled to a commission of 5 per cent. upon all the goods received by him from the defendant, as well as those furnished by the latter to fill the orders forwarded from customers by the plaintiff. The defendant conceded the right of the plaintiff to these commissions on the goods sent to customers obtained by the plaintiff, and to whom the goods were afterwards sent, but denied the right of the plaintiff to commissions upon the other goods which were shipped to the plaintiff, either pursuant to direct orders for that purpose, or upon the assumption that they would be accepted at the prices charged, and received and sold by him in the course of his business.

The dispute between the parties relative to these commissions depended wholly upon the effect to be given to the evidence produced upon the trial before the referee. The plaintiff himself positively testified to a contract or arrangement as broad as that alleged in his behalf. But this was denied by defendant; and his evidence, as well as that of the defendant's agent Avet, controverted the truth of this statement. And the accounts themselves which were yearly rendered by the defendant to the plaintiff, and received and retained by him without objection, were also in conflict with the plaintiff's statement. But it has been urged because the defendant wrote letters to the plaintiff, and concerning the business relations existing between them, in which he was designated as the agent of the former, that these letters so far supported the position taken in behalf of the plaintiff as to render it the duty of the referee to conclude that by the contract the plaintiff was entitled to commissions upon all the goods, including those ordered by himself or sent to him for sale. But these letters are not entitled to that effect; for they in no manner describe or indicate the extent of the agency of the plaintiff in the business, and are entirely consistent with the position taken on behalf of the defendant, that it related to and extended no further than the orders obtained by the plaintiff from customers for goods which were transmitted to and filled by the defendant. That this was the view which was adopted and followed by the referee in the disposition of the action. And it had a decided probability, beyond this evidence, sustaining this conclusion; for it was arranged, according to the testimony, between the parties, that the goods sent to the plaintiff were to be charged at a low price, and, after the payment of freight and duties upon them, he was at liberty to sell them for any price which he could obtain, and the advanced price in this manner secured was wholly for his benefit and his property. He was obligated to account for no part of it to the defendant; and in this state of the business, and to this extent, the assertion was not a probable one, certainly, that the defendant obligated himself to pay him 5 per cent. commissions upon the sale of these goods, after sending them to him at fixed prices. The referee, therefore, had evidence before him fully justifying the conclusion that he reached, that the business of the agency upon which the 5 per cent. commissions were to be paid included no more than the orders obtained by the plaintiff, and afterwards filled by the defendant; and to that extent commissions have been allowed him. And that was conformable to the accounts which passed between the parties, and were apparently acquiesced in, in this respect, by the plaintiff, as to their correctness.

The plaintiff also claimed a yearly salary from the defendant for the services performed by him, amounting to from three to five thousand francs; and in his testimony he stated that the defendant promised to pay this salary to him, depending in amount upon the nature and extent of the orders obtained by him for the defendant. But in that respect he has been contradicted in his testimony both by the defendant and the witness Avet; and the accounts passing yearly between the parties fail to give any support to this demand of the

plaintiff. As to that the referee was entirely warranted in reaching the determination that he did, that the defendant was obligated to pay him no sum whatever for his services by way of salary.

He also claimed a large sum for orders which he had taken for goods during the year in which the business relations existing between himself and the defendant were terminated by the latter. But these orders do not appear to have been in any form transmitted to the defendant prior to the time when the business relations of the parties were discontinued. Neither does it appear that the defendant had placed himself under such obligations to the plaintiff as would require him either to fill these orders, or to indemnify the plaintiff, by way of damages, for his failure to do so. There was no agreement or arrangement, relating to this part of the business, which in any form bound the defendant to continue it through any specified period of time, or to fill any orders not in fact received by him, and when the business was terminated he had become dissatisfied with the plaintiff for his failure to remit moneys as he should, and thereby reduce the amount of his account. That the plaintiff was in default in this respect appears fully from the admissions contained in his own letters written from time to time to the defendant and his agent Avet, as well as from an acknowledgment contained in a statement made by him in January, 1879, admitting an indebtedness against himself exceeding that found by the referee, and amounting to $21,757.88. And it was because of this default, and the large indebtedness at the time owing by the plaintiff to the defendant, that the latter put an end to their business relations. This he was, under the circumstances, authorized to do without becoming liable to the plaintiff for damages. *Marston* v. *Gould*, 69 N. Y. 220.

During the course of the business between the plaintiff and the defendant, the latter shipped goods to the former, both at Boston and at the city of New York. In three instances these goods were seized by the custom-house authorities for what was considered to be a violation of the United States revenue laws; and upon a fourth occasion increased duties were exacted from the plaintiff, which he paid for the purpose of obtaining the possession of the goods. The duties paid by him, and the expenses incurred on account of these seizures, were relied upon as charges against which he was entitled to be indemnified by the defendant in the action. One of these seizures was of three cases of goods shipped by the steamer Bothnia, and delivered at the city of New York. This seizure was made on account of other goods being placed in the packages which were not mentioned in the invoices. The addition of these uninvoiced goods was not made at the instance or by the authority of the plaintiff, but it was wholly done by some person or persons in the employment of the defendant; and that was a violation of the United States revenue laws, for the consequence of which the defendant was clearly responsible. There was no fault whatever on the part of the plaintiff, but it was wholly attributable to the defendant. It was the misconduct of persons in his employment, for which he was legally responsible and accountable. These goods were afterwards released through the joint efforts of the plaintiff and the defendant. But the plaintiff was subjected to the expenditure, according to his testimony, of 3,738 francs in bringing about the release of the goods. The referee allowed him of this amount 1,000 francs, but rejected the residue of his claim. This allowance proceeded upon an account stated, containing this as the amount of the plaintiff's expenditures on this transaction. But, by the seventeenth finding of fact proposed on behalf of the plaintiff, he has found that the whole amount claimed by him for time and expenses was incurred and expended in obtaining the discharge of the goods from this seizure. But he seems to have concluded the plaintiff in the allowance made by him, on the effect he considered the account entitled to receive. But assuming it to have been a stated account, as the referee treated it, the plaintiff was still entitled

to avoid the effect of it by showing this item of 1,000 francs to have been the result of mistake on his part as to the amount and extent of the expenditures. *Welsh* v. *Bank*, 73 N. Y. 424; *Paper Co.* v. *Moore*, 104 N. Y. 680, 10 N. E. Rep. 861; *Harley* v. *Ward*, 76 N. Y. 618; *Samson* v. *Freedman*, 102 N. Y. 699, 7 N. E. 419. And the details of the evidence which was given, warrant the conclusion that the plaintiff stated these expenditures at the sum of 1,000 francs under the effect of a mistake or misapprehension of the true amount of expenditures made and time employed by him. And he should not have been concluded, as he was by the referee, and confined to this sum of 1,000 francs, in the state of the case as it was made to appear. In this respect the referee fell into an error. But, as the facts have been found, the mistake can be rectified by adding this difference of 2,738 francs to the amounts allowed in the plaintiff's favor; and that allowance should be made with interest from the 1st of August, 1875, at which time the expenditures were completed.

The seizure of the goods delivered from the ship Batavia at the city of Boston, and of the goods delivered from the steamer Scythia at the city of New York, and the exactions of advanced freights upon the delivery of other goods at the city of New York, proceeded upon an entirely different ground, and for which the defendant was neither responsible nor accountable. They each proceeded upon the assertion of an under-valuation of the goods. But it was shown by the evidence on behalf of the defendant that the goods were not under-valued, and by that of the plaintiff himself that goods received upon other occasions before and after the unlading of these goods were allowed to pass by the custom-house authorities on the same valuation, without objection or complaint. There was accordingly no wrong or fault on the part of the defendant rendering him liable to the expenditures caused by these seizures, and the additional duties imposed, so far as they affected goods sent to and for the plaintiff himself. He was to pay the freight and the duties upon those goods. What the defendant was bound to do was to deliver them free on board in France, and that he is shown to have done. After that, their liability to irregular or unfounded seizure, or claims for additional duties, was at the risk of the plaintiff, so far as the goods were not consignments, but were shipped directly to him as the purchaser. And to this extent he was the purchaser of the goods, although, as between himself and the defendant, it may have been understood that he could return, in exoneration of his obligation for the purchase price, such portions of the goods as in the end should remain unsold. The transactions during the intermediate period were sales of the property, subject to the risk of the plaintiff, and to this liberty, in the end, of returning goods in his own exoneration to the defendant. *Marsh* v. *Wickham*, 14 Johns. 167; *Taylor* v. *Tillotson*, 16 Wend. 493; *Ex parte White*, L. R. 6 Ch. App. 397. And it was for the plaintiff, therefore, himself to stand the consequences of the seizure of these goods so shipped to him, and the advancement of the duties upon the other goods not in fact seized by the custom-house authorities. They were in the wrong, as the facts were made to appear, in making these seizures and advancing the duties, and also imposing a penalty, as was done, upon the goods discharged from the steamer Batavia; and for that wrong, or the losses occasioned by it on the goods ordered by the plaintiff, the defendant was in no manner legally responsible to him.

The precise proportion which these goods shipped to the plaintiff, in compliance with his orders, bore to the entire shipment, was not made to appear; but from his own testimony it was entirely fair and reasonable to assume that no more than half the goods affected by the seizures or the advancement of the duties were consignments for the benefit of the defendant himself. The evidence was ample of the plaintiff in the course of his examination to support this view; and the referee acted upon it in the allowances made by him, for he charged the defendant with one-half the expenditures in this manner incurred, leaving the plaintiff to bear and sustain the other half. He was

also sustained in making this division of the expenditures by the letter of the defendant, Duviard, of November 23, 1877, replying to complaints which were made concerning these seizures and imposition of additional duties. In that letter the defendant stated: "I shall take on my account one-half of what you will have to pay, and, if they tax you thirty-eight per cent. higher, which is simply ridiculous, I shall take charge of one-half of that." No direct reply was made by the plaintiff to this letter, neither was any required, but he appears to have silently acquiesced in this measure of responsibility assumed by the defendant; and under that, as well as the other, evidence, the referee was clearly justified in the disposition which he made of this part of the case.

For the seizure of the goods delivered by the Scythia an action was prosecuted by the plaintiff against the United States authorities, and a recovery was had in his favor for the value of the goods which were seized, and which was realized and collected by the plaintiff. This was a clear vindication of the conduct of the defendant, as well as of that of the plaintiff, in these shipments, and furnish an additional reason justifying the referee in rejecting one-half of the expenditures made, and not reimbursed, in and about this transaction. And an action was also brought by him to recover back the additional duties paid upon the goods, under protest, which were not seized. That action, however, has not been tried, but has remained in a state of suspense since this suit was commenced by the plaintiff. What may be its result cannot now with certainty be predicted. But it is probable, since there was no under-valuation of the goods, but the invoices were made at the prices for which they were shipped to the plaintiff, that this amount will be recovered yet by him in the action against the United States authorities.

Some other charges were brought forward in the course of the trial, dependent wholly upon the testimony of the plaintiff for their support. But no legal error can be held to have been made by the referee in disallowing them, for he was not conclusively bound by the evidence of the plaintiff, even where it was not contradicted by the defendant or any other witness. But his evidence was still subject to the infirmity that it might be rejected by the referee on account of his interest as plaintiff in the action. *Elwood* v. *Telegraph Co.*, 45 N. Y. 549; *Honegger* v. *Wettstein*, 94 N. Y. 252, 261; *Gildersleeve* v. *Landon*, 73 N. Y. 609.

There are no exceptions deserving any consideration taken to the rulings of the referee during the course of the trial. The case was one to be disposed of, as it was, wholly upon the effect of the evidence; and, in the conclusions adopted and followed by the referee, he has been supported by the testimony given upon the trial, with the single exception which has previously been mentioned. And that will either require another trial, or a modification of the judgment, by adding to the items which have been allowed to the plaintiff the sum of 2,738 francs, with interest from the 1st of August, 1875. The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event, unless the defendant, within 20 days after notice of this decision, stipulates to make this addition; but, if the stipulation be given, then the judgment, as so modified, should be affirmed, without costs of the appeal. All concur.