## WILLIAM B. LEWIS *vs.* THE PHŒNIX MUTUAL LIFE INSURANCE COMPANY.

The defendants, through *R.* their local agent, issued a policy of insurance for $10,000 on the life of *L.*, a brother of the plaintiff, for the benefit of and payable to the plaintiff. By a secret arrangement between *R.* and the plaintiff, *R.* advanced $525 toward the payment of premiums, and agreed to advance the subsequent premiums, the amounts so advanced to be refunded by the plaintiff; and it was further agreed that *R.* should assume the policy if requested by the plaintiff within three years, and refund to him the amount of premiums paid by him with interest, and should receive $1,000 of the sum insured, if paid by the defendants, in case *L.* should die within three years. *L.* did not know of the existence of the policy, and was not examined by a physician as the rules of the defendants required, and the plaintiff had no interest in his life except such as arose from the relationship between them. The defendants were ignorant of all these facts. In the application for insurance the plaintiff stated that he had an interest in the life of *L.* to the full amount of insurance applied for.

The defendants having cancelled the policy, in an action to recover the amount of premiums paid it was holden, (1.) That the transaction between the plaintiff and *R.* constituted a fraud upon the defendants, to which the plaintiff was a party in contemplation of law, and that the defendants could take advantage of the fraud as well against him as against *R.*, although the plaintiff did not actually participate in the fraudulent intent. (2.) That the mere relationship between the plaintiff and *L.* was not such an interest as would support the policy, but that the policy was *primâ facie* valid, and could only be avoided by showing by parol evidence such want of interest, and that the plaintiff was now estopped from averring such want of interest against the defendants. (3.) That the responsibility assumed by the defendants, and the risk and inconvenience to which they were exposed by the acts of the plaintiff, constituted a consideration for the premiums paid.

ASSUMPSIT for money had and received, to recover the amount of premiums paid upon a life insurance policy; brought to the Court of Common Pleas, and tried on the general issue closed to the jury, before *Pardee, J.* The jury returned a verdict for the plaintiff, and the defendants moved for a new trial for error in the charge of the court. The case will be sufficiently understood from the opinion.

*Baldwin,* in support of the motion.

*Ingersoll* and *Munger,* contra.

CARPENTER, J. We shall pass over the question of jurisdiction, and some of the minor points discussed in this case, for the reason that the view we take of the law upon the conceded facts practically disposes of the case upon its merits. The following facts do not seem to have been disputed. George L. Remington was the accredited local agent of the defendants. Through his agency the defendants issued a policy for $10,000 on the life of Thomas Lewis, for the benefit of, and payable to, the plaintiff, a brother of said Thomas. By a secret arrangement between Remington and the plaintiff, Remington had a personal interest in the policy. In case Thomas Lewis should die within three years, he was to have $1,000 of the sum insured, if paid, and obligated himself to take the policy off the plaintiff's hands, if he so elected, at any time

within three years, and refund to him the amount paid thereon with interest. In consideration of this Remington paid $25 of the first premium, and advanced the further sum of $500, allowing the plaintiff to refund in monthly instalments of $50 each, without interest, and agreed to advance the subsequent premiums, to be refunded in like manner with interest. The plaintiff had no interest in the life of his brother except such interest as arises from the relationship existing between them. Thomas Lewis did not know of the existence of the policy, and was not examined by a physician as the rules and regulations of the company required. The defendants were ignorant of these facts, and also of the fact that the plaintiff had no insurable interest in the life of his brother. Nor does it appear that the defendants had any knowledge of the terms of the contract between the plaintiff and Remington. The defendants afterward cancelled the policy, and the plaintiff brings this suit to recover the premium paid.

From these facts it will be seen that Remington in negotiating the policy acted for himself, and at the same time, and in the *same transaction,* acted as agent for the defendants. Not only so, but he involved the company in a contract, without their knowledge, by which he, a stranger to the party whose life was insured, might have an interest to the extent of $10,000 in the death of that party. All these facts were within the knowledge of the plaintiff. It will not be contended that any well conducted life insurance company, knowing the facts, would issue a policy under such circumstances. It requires no argument to show that the tendency of such a transaction is to defraud the company. It was not a legitimate transaction in life insurance, at least so far as Remington's interest in it was concerned, but was clearly a wagering policy, a mere speculating adventure, a contract forbidden by statute and by the policy of the law. The law not only refuses to enforce such a contract, but will decline to aid a party, knowingly entering into it, in recovering money paid in pursuance of it from the party upon whom the fraud was attempted to be practised. In view of the facts in the case, the defendants

asked the court to charge the jury, that the contract and the policy issued upon it were against public policy, illegal and a fraud upon the defendants. The court charged the jury that if there was fraud in fact, or fraud in intent, which fraudulent intent was participated in by the plaintiff, he could not recover, and that the defendants could not take advantage of any fraud on the part of their agent, unless that fraud was participated in by the plaintiff.

It must be remembered that the defendants were the principal party liable to suffer from Remington's fraud. The plaintiff was a party to the contract, and he, if any one, expected to derive some benefit from it. All the facts and circumstances which constituted the fraud were within his knowledge. He was therefore in contemplation of law a party to the fraud, and the defendants can take advantage of it as well against him as against Remington, and the jury should have been so instructed. The mere fact that he was ignorant of the legal effect of the transaction is not sufficient to exonerate him from the legal consequences of the fraud. "Fraud," said the late Chief Justice STORRS, "is *cheating*." The instruction given led the jury to believe that the plaintiff could not be affected by the fraud, unless he actually *cheated*, or intended to *cheat*, whereas the law stamps the transaction as fraudulent, and imputes an intention to defraud to all parties who knowingly and wilfully engage in it. Remington's want of good faith to his principal tainted the whole contract. In this respect there is no ground for distinguishing between his and the plaintiff's interest in the policy. To test the matter, suppose Thomas Lewis had died during the year, and in a suit upon the policy all the facts had come to light. Would any lawyer have contended that the plaintiff could recover to the extent of his interest in the policy, $9,000, leaving the fraud to operate only upon Remington's interest? Why not, if the fraud does not affect the plaintiff. Again, suppose in such a suit the defendants should defend successfully. Could the plaintiff then sue for and recover the premium? Why not, if the doctrine of the court below is correct? Why not, if the plaintiff can recover in this action?

To carry the illustration one step further, suppose the plaintiff in an action on the policy could recover; then the plaintiff encounters another difficulty, to wit, there was a good consideration for the premium paid, and therefore he would not be entitled to recover in this action.

It will not do to say, as the court intimates in this part of the charge, that the fraud of Remington was the fraud of the defendants' agent. As to this transaction Remington was not their agent, but was acting outside the scope of his agency. Although nominally representing the defendants, he was in reality acting for himself and the plaintiff. So far as he was in fact an agent he was the agent of the plaintiff. In any aspect in which this question may be viewed, we are unable to see why the fraud is not fatal to the plaintiff's claim.

The plaintiff further contends that the policy never was an operative instrument, for the reason that he had no insurable interest in the life of his brother, and therefore there was no consideration for the premium paid, and that on that ground he is entitled to recover. The court charged the jury, in opposition to the claim of the defendants, that the plaintiff had no insurable interest, and that he was not estopped under the circumstances from showing his want of interest.

We think it is a correct legal proposition, that the mere relationship of a brother is not such an interest as will support a policy of life insurance. The interest required to make such a contract valid must be of a pecuniary nature. A few cases will be cited by way of illustration. A father, being entitled to the wages of his minor son, has an insurable interest in his life. *Loomis* v. *Eagle Life Ins. Co.*, 6 Gray, 396. A sister, dependent upon a brother for her education and support, has an insurable interest in the brother's life. *Lord* v. *Dall*, 12 Mass., 115. A person advancing money to another, in consideration of which he acquires an interest by contract in his future services, may protect that interest by an insurance on his life. *Bevin* v. *The Conn. Mut. Life Ins. Co.*, 23 Conn., 244. From these and many other cases that might be cited it is apparent that the plaintiff might have had an insurable interest in the life of his brother. He might have

been dependent upon him for his support. He might have had a fixed pecuniary interest in his future services. He might have been a creditor. The defendants could not know from the application that the plaintiff did not have a pecuniary interest in the continuance of his brother's life. The policy therefore on its face is not void, but *primâ facie* valid, and could only be avoided upon proving, by parol evidence, a want of interest. Assuming that fact to be proved, we think the court was correct in its instruction upon this point.

But we think the court erred in instructing the jury that the plaintiff was not estopped from showing his want of interest. The application contained the distinct interrogatory, whether he had " an interest in the life to be insured to the full amount now applied for ?" He answered unequivocally " Yes." He was not deceived or misled by Remington in respect to any fact involved in the matter. They were all well known to him. The advice given by Remington upon a legal point, to wit, that the relationship of blood created an insurable interest in the life of Thomas to support the policy, cannot have the effect to excuse him for the misrepresentation. The plaintiff, as well as Remington, is presumed to know the law. He knew all the facts, and was bound to answer correctly. The relationship clearly appeared from an answer to a preceding interrogatory. That affords a strong presumption that the question relating to interest had reference to something aside from relationship. Considering the interest which Remington had in this policy, and the peculiar circumstances attending the transaction, we think it was the plaintiff's own folly to rely upon his declaration that the relationship constituted a sufficient interest. Under the circumstances, that declaration can in no proper sense be regarded as the declaration of the defendants, nor is it such an act of their agent as will be binding upon them.

The question then recurs whether the defendants have acted upon the answer to this interrogatory in such a manner as to estop the plaintiff from showing its falsity. The principles which govern the application of the doctrine of *estoppel in pais* are too well known to require repetition here. Had the

answer stated the facts, the presumption is that the defendants would not have issued the policy. Presumptively then the answer given induced the defendants to enter into this contract. But the plaintiff says they are not thereby prejudiced, because, the policy being void, they in fact incurred no liability. The answer to that is that the policy is not void upon its face. The facts which render it void could only be ascertained upon inquiry and investigation. If, by the death of the insured, the policy had become payable during the year, such an investigation might not have been made; or, if made, might not have been successful in bringing to light the facts. Remington's interest in the policy would naturally lead him to make such representations as to throw the defendants off their guard, and induce them to pay the claim. That certainly was a risk which the defendants assumed. Again, it would have been the right of the plaintiff to insist upon a judicial investigation. Had a suit been brought on the policy, the defendants would at least have incurred the expense and hazard of a law suit, with $10,000 at stake, and the usual uncertainty as to the result. The plaintiff therefore by his words and conduct intentionally caused the defendants to believe that he had an insurable interest in the life of his brother, and induced them to act upon that belief so as to change their own previous position, and assume a responsibility which they would not otherwise have assumed, and he is now concluded from averring against the defendants a different state of things.

But again, the responsibility assumed, and the risk and inconvenience to which the defendants were exposed, of themselves constituted a consideration for the premium paid, which perhaps was a sufficient consideration, if not in all respects an adequate one. At all events the plaintiff took his chances of a favorable result, and the year had nearly expired before the true character of the transaction was discovered. After the discovery, and after it was apparent that the enterprise was a failure, the plaintiff attempted to rescind the contract and recover back the money paid. There is no equity in his

claim, and if he recovers at all it must be in obedience to some inflexible principle of law.

The record presents other questions which involve important principles. But as we are not prepared to decide them without further discussion and consideration, we pass by them, believing that they will not be material in another trial of this case.

A new trial is advised.

In this opinion the other judges concurred.