LAWRENCE KYTE *vs.* COMMERCIAL UNION ASSURANCE COMPANY.

Suffolk.    November 19, 1888. — May 9, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Fire Insurance — Massachusetts Standard Policy — Effect of Temporary Increase of Risk.*

A policy of insurance, in the form prescribed by the Pub. Sts. c. 119, § 139, (St. 1887, c. 214, § 60,) against loss by fire upon a dwelling-house, provided that "this policy shall be void" if without the assent of the company the insured should cause an increase of risk. The insured, for a substantial portion of the term of the policy, used the premises for the illegal sale and keeping for sale of intoxicating liquors, but afterwards and before a loss by fire obtained a license to sell such liquors there. *Held,* in an action on the policy, that if the temporary illegal use of the property caused an increase of risk, the policy was not merely suspended during the continuance of it, but might be treated by the company as wholly void.

CONTRACT upon two policies of insurance, one upon a dwelling-house and the other upon a barn, in the form prescribed by the Pub. Sts. c. 119, § 139, (St. 1887, c. 214, § 60,) against loss by fire, each for three years, from January 24, 1881, and

April 2, 1881, respectively.  Each policy contained the following provisions :

"This policy shall be void if any material fact or circumstance stated in writing has not been fairly represented by the insured, — or if the insured now has or shall hereafter make any other insurance on the said property without the assent in writing or in print of the company, — or if, without such assent, the said property shall be removed, except that, if such removal shall be necessary for the preservation of the property from fire, this policy shall be valid without such assent for five days thereafter, — or if, without such assent, the situation or circumstances affecting the risk shall, by or with the knowledge, advice, agency, or consent of the insured, be so altered as to cause an increase of such risks, — or if, without such assent, the said property shall be sold, or this policy assigned, — or if the premises hereby insured shall become vacant by the removal of the owner or occupant, and so remain vacant for more than thirty days without such assent, — or if it be a manufacturing establishment running in whole or part extra time, except that such establishments may run in whole or in part extra hours not later than nine o'clock P. M., or if such establishments shall cease operation for more than thirty days without permission in writing indorsed hereon, — or if the insured shall make any attempt to defraud the company, either before or after the loss, — or if gunpowder or other articles subject to legal restriction shall be kept in quantities or manner different from those allowed or prescribed by law, — or if camphene, benzine, naphtha, or other chemical oils or burning fluids shall be kept or used by the insured on the premises insured, except that what is known as refined petroleum, kerosene, or coal oil may be used for lighting."

The answer, among other things, set up that the policies were rendered void by an increase of risk caused by the plaintiff without the assent of the defendant.

Trial in the Superior Court, after the former decision, reported 144 Mass. 43, before *Blodgett*, J., who allowed a bill of exceptions, which, so far as material, was as follows.

At the commencement of the trial, the defendant waived every defence set up in its answer, except that the policy was rendered void by an increase of risk, before the dwelling-house

and the barn were damaged by fire, which occurred on November 16, 1883. The dwelling-house, which was in process of erection when the policy upon it was issued, contained sixteen rooms, one of which was finished and furnished by the plaintiff as a bar-room, and was occupied by him as a hotel; and the barn was situated near it. There was evidence tending to show that from April, 1882, to July, 1883, the hotel was used by the plaintiff for the illegal sale and keeping for sale of intoxicating liquors, such liquors being seized on the premises on April 7, 1882, and duly forfeited, and the plaintiff being convicted for the illegal sale of such liquors in April, 1883, and again in June of the same year.

The defendant offered evidence tending to show that there was a custom among fire insurance companies doing business in Massachusetts, for many years past, to charge a higher rate of premium for insurance on a building occupied by a person engaged in the business of a common victualler than on a dwelling-house; that a building occupied for the purpose of carrying on the business of a common victualler, and one occupied as an ordinary dwelling-house, belonged to different classes, it being the general custom of insurance companies doing business in this Commonwealth to charge two or three times as much premium on the former as on the latter, and that a much higher premium would be charged for insuring a building in which intoxicating liquors were illegally sold than on one of the same class in which they were not sold.

Upon the question whether the policy became void by reason of the use of the dwelling-house in 1882 by the plaintiff for the illegal sale of intoxicating liquors, the judge instructed the jury as follows:

"If it be assumed (and it may be for the purposes of this trial) that such illegal use would vitiate the policy and deprive the plaintiff of the right to maintain an action for a loss by fire while the building was being so used, still, if upon all the evidence in the case you find that that use was temporary, not contemplated at the time when the policy was taken by the plaintiff, and that such illegal use ceased from and after the time when the plaintiff had a license authorizing him to sell intoxicating liquors, the fact that he made an illegal use of the

premises in 1882 will not deprive the plaintiff of the right to maintain the action. His right under the policy, if it was suspended while the illegal use of the building was being made, would revive when he ceased to use the building illegally."

The defendant asked the judge to give the jury the following instructions:

"1. If you find that during the time for which these policies were issued the circumstances affecting the risk were so changed by the plaintiff Kyte, in the use he made of this building, or in the use that others made of it with his knowledge and consent, that a higher rate of premium would be demanded in its altered state than in its original state, then this policy is void as to the plaintiff Kyte, and he cannot recover for his interest therein, although the fire did not occur from the alteration.

"2. Nor is the plaintiff Kyte entitled to recover for his interest if he thought this alteration in circumstances did not increase the risk, if in fact it did increase the risk.

"3. If you find that during the time for which these policies were issued the plaintiff Kyte, by obtaining a common victualler's license and making use of this building under said license, and legally or illegally selling intoxicating liquors therein, did increase the risk so that a higher premium must be paid for the insurance of this building thus used than for the insurance of a dwelling-house, then this policy becomes void as to the plaintiff Kyte, and he cannot recover for his interest therein.

"4. If you find that by the illegal sale of intoxicating liquors in this building by the plaintiff Kyte, or by others with his consent and knowledge, for a certain portion of the time for which these policies were issued, the risk was for that period increased, this policy is void as to the plaintiff Kyte's interest, and he cannot recover, although this increase was not permanent and did not cause the fire.

"5. If you find that while these policies were in force intoxicating liquors were illegally kept and sold in this building by the plaintiff Kyte, or with his consent or knowledge, and that thereby the risk was increased so as to require a higher premium for its insurance in the changed circumstances, this policy became void as to his interest, and he cannot recover.

"6. If you find that while these policies were in force the

plaintiff did obtain a common victualler's license, and make use of this building for this purpose, and if you find that a dwelling-house and a building occupied and used by a common victualler do not belong to the same class of insurance risks, and the latter requires the higher premium for insurance, then the plaintiff is not entitled to recover for his interest in this property, although the fire did not occur from the alteration."

The judge gave the second instruction requested, and also the third, with the exception of the words "so that a higher premium must be paid for the insurance of this building thus used than for the insurance of a dwelling-house," and the fifth, with the exception of the word "illegally" and the words "so as to require a higher premium for its insurance in the changed circumstances." The judge declined to give the first, fourth, and sixth instructions requested, saying with regard to the fourth instruction, "The fourth I shall decline to give; I have given what would be entirely inconsistent with it."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*E. B. Powers & S. L. Powers*, for the defendant.

*C. Q. Tirrell*, for the plaintiff, cited *Fuller* v. *Ruby*, 10 Gray, 285, 288; *Worthington* v. *Bearse*, 12 Allen, 382; *Hinckley* v. *Germania Ins. Co.* 140 Mass. 38, 48; *Ring* v. *Phœnix Assurance Co.* 145 Mass. 426; *Schmidt* v. *Peoria Ins. Co.* 41 Ill. 295; *Insurance Co. of North America* v. *McDowell*, 50 Ill. 120, 129.

C. ALLEN, J.    These policies were in the form of the Massachusetts Standard Policy, and each provided that "This policy shall be void . . . if, without such assent [namely, the assent in writing or in print of the company], the situation or circumstances affecting the risk shall, by or with the knowledge, advice, agency, or consent of the insured, be so altered as to cause an increase of such risks, . . . or if gunpowder or other articles subject to legal restriction shall be kept in quantities or manner different from those allowed or prescribed by law." Various other circumstances were enumerated which would also avoid the policy.    At the beginning of the trial, the defendant waived every defence except increase of risk.    The defence of the illegal keeping of intoxicating liquors, as a separate and distinct defence, was therefore waived.

We have to consider, in the first place, whether the instructions requested by the defendant were given in substance. The plaintiff contends that they were. The learned judge before whom the case was tried adopted in substance the third and fifth instructions asked for by the defendant, and thus instructed the jury, that if they should find that during the time for which these policies were issued the plaintiff Kyte, by obtaining a common victualler's license and making use of this building under said license, and legally or illegally selling intoxicating liquors therein, increased the risk, then this policy became void as to the plaintiff Kyte, and he could not recover for his interest therein; and if they should find that while these policies were in force intoxicating liquors were kept and sold in this building by the plaintiff Kyte, or with his consent or knowledge, and that thereby the risk was increased, this policy became void as to his interest, and he could not recover. This was a general and broad instruction, including the increase of risk by using the premises as a common victualling place, or as a place for selling intoxicating liquors legally or illegally, and well covered the general question of the effect of an increase of risk. From this instruction, taken alone, a jury might well have inferred that the policy would be void in case of any such increase of risk at any time during the time covered by the policies and before the fire.

But the defendant, in the fourth request for instructions, asked for a special instruction, adapted to the case of a temporary increase of risk which had ceased before the time of the fire; that is to say, that if the jury should find that, by the illegal sale of intoxicating liquors in this building by the plaintiff Kyte, or by others with his consent and knowledge, for a certain portion of the time for which these policies were issued, the risk was for that period increased, this policy would be void as to Kyte's interest, and he could not recover, although this increase was not permanent. The judge declined to give this ruling, and instructed the jury, in substance, that if that illegal use was temporary, not contemplated at the time when the policy was taken by the plaintiff, and ceased before the fire, then the fact that he had made an illegal use of the premises in 1882, which was during the time covered by the policy, would not deprive the plaintiff of the right to maintain the action; and that his right under

the policy, if suspended while the illegal use of the building continued, would revive when he ceased to use it illegally. This instruction did not in express terms mention the subject of an increase of risk by the illegal use of the premises for selling liquor; but the instruction was given in place of the fourth request for instructions, and that request was refused, the judge saying that he had given what would be entirely inconsistent with it.

The question is thus presented whether the provision of the policy that it shall be void in case of an increase of risk means that it shall be void only during the time while the increase of risk may last, and may revive again upon the termination of the increase of risk. The provision is that the policy shall be void if any one of several circumstances successively enumerated shall be found to exist. Some of these circumstances relate to the time of issuing the policy, and others could not arise till afterwards. They are of different degrees of importance, some of them going to the essential matters of the contract, and others being comparatively trivial in character. The language of the policy is the same in respect to them all, that the policy shall be void.

In *Hinckley* v. *Germania Ins. Co.* 140 Mass. 38, the policy was in the same form as those in the present cases, and for a short time during the term of the policy the plaintiff kept a bowling alley and billiard table without having any license therefor. There was no question of increase of risk, or other actual prejudice to the insurer; and under these circumstances two questions arose: first, whether the plaintiff's act fell within the provision that the policy should be void if gunpowder or other articles subject to legal restriction should be kept in a manner different from that allowed by law; and secondly, whether, assuming that the policy would be void during the time of the illegal keeping of the bowling alley and billiard table, it would revive after such temporary use had ceased. In deciding the case, the court intimated that the plaintiff's act was not within the meaning of the provision in the policy, unless the risk was thereby increased, but placed the decision upon the second ground, that the policy would revive. The court now thinks it would have been better to place the decision of

this part of the case solely upon the first ground, leaving it an open question whether a departure from the terms of the provision of the policy, without an increase of risk, may be deemed merely to suspend, and not absolutely to avoid the policy. However that may be, we think an increase of risk entitles the insurer to avoid the policy absolutely. The contract of insurance depends essentially upon an adjustment of the premium to the risk assumed. If the assured by his voluntary act increases the risk, and the fact is not known, the result is that he gets an insurance for which he has not paid. In its effect upon the company, it is not much different from a misrepresentation of the condition of the property.

If the provision stood alone, that in case of any material misrepresentation as to the risk or any voluntary increase of risk afterwards the policy should be void, it could hardly be doubted that the words should be taken in their natural, obvious meaning. The fact that with this are coupled the other provisions above referred to does not change its meaning with reference to the effect and consequence of an increase of risk. An increase of risk which is substantial, and which is continued for a considerable period of time, is a direct and certain injury to the insurer, and changes the basis upon which the contract of insurance rests; and since there is a provision that, in case of an increase of risk which is consented to or known by the assured, and not disclosed and the assent of the insurer obtained, the policy shall be void, we do not feel at liberty to qualify the meaning of these words by holding that the policy is only suspended during the continuance of such increase of risk. *Lyman* v. *State Ins. Co.* 14 Allen, 329. *Mead* v. *Northwestern Ins. Co.* 7 N. Y. 530.

It follows, therefore, that the fourth instruction which was requested, or something in substance like it, should have been given. Upon the facts stated and assumed, the increase of risk, if there was one, continued for fifteen months, and could not be treated as a casual, inadvertent, or inevitable thing.

*Exceptions sustained.*