FRANKLIN J. SCHREIBER *vs.* GERMAN-AMERICAN HAIL INSURANCE COMPANY.

June 2, 1890.

**Insurance on Growing Crops—Condition Avoiding Policy.**—A condition in a policy of insurance that, in case any of the representations or statements in the application are untrue, the policy shall be null and void, does not make the policy absolutely void, but void only at the election of the insurer.

**Same—Effect of Election to Avoid.**—In case of election to avoid the policy, it becomes void *in toto* and from the beginning, so that the insurer cannot avoid it and enforce the promise of the insured to pay the premium.

**Same—Waiver of Right to Avoid.**—After a loss on a policy with that condition, the insurer brought suit against the insured on the premium note, took judgment, and collected it by execution. *Held* that, although thus enforcing payment of the note, if done without notice of the breach of condition, would not be a waiver of its right to avoid the policy, yet the retention, after notice of the breach, of the money thus collected, would be a waiver. After learning of the breach the insurer could not elect to avoid the policy without returning, or offering to return, the money so collected.

**Same—Construction—Two Concurrent Policies Construed Together.**— Two applications for insurance of crops—one upon 40 acres of barley in the north half of section 28, etc., and one upon 120 acres of oats in the same half-section—were made at the same time, by the same person, to defendant; and two policies thereupon were issued by defendant at the same time. In the body of each policy, in print, coming after the description of the land,—partly in print and partly in writing,—was a clause that would limit the number of acres specified to a strip next to and along the northerly line of the section, of sufficient width to make the specified number of acres. There was no such clause in either application. Reading the two policies together, and giving effect to that clause in each, they assume to insure 120 acres of oats covering a strip 60 rods wide, along and next to the north line of the section, and 40 acres of barley within the strip covered by the oats. *Held*, that to determine whether the clause is operative in either policy, the court will read the two applications and the two policies together, and, as the retention of

the clause leads to an unreasonable and absurd result, and makes the descriptions inconsistent, it must be rejected from each policy.

**Same—Appraisement without Notice to Insured.** — According to the terms of the policies, if the insured and the agent of the insurer present to adjust a loss should be unable to agree, the former was to deposit with the agent $10 to pay the expenses of an appraisement of the loss, and the agent was thereupon to appoint three appraisers, who should immediately repair to the field where the loss occurred, and appraise the loss or damage. *Held*, that an appraisement without notice to the insured of the appointment of appraisers, and of the time when they were to make the examination, was void.

**Affidavit of President held Evidence against Company.**—An affidavit of the president of the defendant, made to procure a continuance in this action for the absence of a witness, is competent evidence against this defendant that the witness was agent of the defendant, and had authority from it as stated in the affidavit.

Appeal by defendant from an order of the district court for Clay county, refusing a new trial after a trial before *Mills*, J., and verdict of $3,876.15 for plaintiff.

*John B. & W. H. Sanborn*, for appellant.

*R. R. Briggs*, for respondent.

GILFILLAN, C. J. This is an action upon three policies insuring growing crops against loss or damage by hail. Each policy contained a condition that, in case any of the representations or statements made in the written application are untrue, "this policy shall be null and void." Under this condition, one defence alleged is that the application represented that the land was free from incumbrances, whereas it was subject to mortgages and liens. The policies issued June 29, 1881. The loss or damage occurred September 4, 1881. In February following the defendant took judgment against the insured upon the unpaid premium notes, all of which fell due October 1, 1881. Execution was issued upon it, and it was paid.

The condition we have stated did not make the policies absolutely void. They were void at the election of the defendant, which might waive the breach of the condition. If it chose to waive it, the insured could not avoid the premium notes by reason of the breach. In a case similar to this, the court, in *Huntly* v. *Perry*, 38

Barb. 569, an action upon a premium note, said that the insured shall not be permitted to set up his own misrepresentation as a defence when the company are asserting the validity of the policy, and seeking to enforce the consideration he agreed to pay for it.

But if the defendant, under this condition, elect to avoid the policy, it must avoid it *in toto,* and from the beginning. It could not affirm it for part of the time, or for one purpose, and avoid it for the remainder of the time, or for another purpose. If avoided, the consideration for the premium notes would fail. Where there is a stipulation in the policy that, in case it is void as an insurance for violation of such a condition, the insurer may retain the paid-up premium, it may be the insurer can so retain it notwithstanding he elects to avoid the policy. But he cannot avoid it and enforce the promises by the insured in consideration of the insurance. A stipulation that, in case the policy shall become void as an insurance from the time of the happening of a particular event, the whole premium paid or unpaid for the entire term shall be deemed earned, gives the insurer the right to collect the unpaid premium; for the benefit of insurance which the insured has to the time of the specified event is a sufficient consideration for the promise to pay the premium. There is no consideration for such promise where the insured gets no benefit of insurance.

To make any act of the insurer a waiver of the breach of a condition for which he may elect to treat the policy as void, it must be with notice of the breach. As it does not appear that this defendant had notice of the breach alleged when it enforced payment of the premium notes, that did not constitute a waiver. But the action to enforce the notes could proceed only on the theory that the policy was valid. It was a solemn assertion of its validity. And, having by that means compelled the insured to fully perform the contract on his part, it certainly seems unjust that it should retain what it thus compelled the insured to pay, and be permitted to escape the obligations of the contract on its part. After it learned that it might elect to avoid the policy, honesty required that, before so electing, it should restore the money, payment of which was thus exacted. The retention of that money was—in morals, certainly—inconsistent with an intention to

avoid the policy. We find no case exactly like this. There are some·
which seem to intimate that before electing to wholly avoid the policy
the insurer must return the premium even voluntarily paid. *Fish-
back* v. *Phœnix Ins. Co.*, 54 Cal. 422; 427; *Harris* v. *Equitable Life
Ass. Society*, 64 N. Y. 196; *Home Mut. Life Assn.* v. *Riel*, (Pa.) 17
Atl. Rep. 36. Without expressing any opinion of what is said in
those cases, we do not hesitate to hold in this case that the defend-
ant could not retain the premium thus collected, and also avoid the
policy; that, under the circumstances, it was defendant's duty, as
soon as it learned of the breach of condition, to determine whether it
would abide by the policy and retain the premiums, or restore them
and elect to avoid it. It has never returned nor offered to return
the premiums, and by retaining them must be deemed to have elected
to abide by the policy. ·

The decision of this point renders it unnecessary to consider points
4, 5, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20, and 21, in appellant's
brief. There is nothing requiring special mention in points 1, 2, 3,
7, 8, and 18. We see no error in the matters they point out.

One matter of defence is that two of the crops claimed to be in-
sured, to wit, 120 acres of oats and 40 acres of barley, under two of
the policies, were not upon the lands described in the policies. It
appeared from the testimony that these crops were on the south half
of the north half of section 28; the 120 acres of oats being the south-
erly 120 acres of the south half, and the 40 acres of barley being the
40 acres next north of the 120,—the two together taking up the
whole south half. The applications for the policies were made at
the same time, and the policies issued at the same time. The ap-
plication for the policy on the barley described the land, "Acres, 40,
all situated in the north·half of section 28," etc. That for the pol-
icy on the oats described it as "Acres, 120, all situated in the north
half of section 28," etc. In each of the policies was this provision:
"That the description of the land, the crops on which are hereby in-
sured, is the same as the assured has given in his application; and
that the tract of land on which the respective crops are situated is a
tract of land extending along the entire northerly line of the portion
of the section last above described, of uniform and sufficient width

to constitute the number of acres above named, for insurance upon which this application is made; and that, unless the assured have otherwise clearly described the tracts and acres named, it is agreed that this shall be taken and held to be the description of the land on which the insured crops stand in the issuance of the policy, and the adjustment of the loss, if any, that may occur, whether in fact there are any crops on such northerly portion or not." This was in print, in the body of the policy, after the description of the land, which was partly in print and partly in writing. The application contained no such provision. If this provision applies to the policies, then there can be no recovery either for the oats or the barley. Ordinarily, such a provision in the policy, in the case of a single policy, with no more specific description in the application and policy than by giving the number of acres in a specified subdivision, would limit and control the description. In determining whether in this case the parties are to be deemed as intending and understanding the clause to have that effect, we must take into account that there were two applications made at the same time, and two policies issued at the same time; and if in each policy the clause is operative, then, taking the two policies together, we have this singular result: that the defendant intended to insure 40 acres of barley, taken in a strip 20 rods wide along the north line of the section, and 120 acres of oats in a strip 60 rods wide along the same line; the 120 acres of oats including the 40 acres of barley. It would be an absurd and unreasonable intention. There is no way to avoid attributing it to the parties but by holding that they did not intend the clause to be operative. It is inconsistent with the clear intent of the policies. If not operative, then, according to the descriptions in the applications and policies, there was insured 120 acres of oats and 40 of barley in the north half of the section, in whichever part of that half they might be situated; and this we consider to be the effect of the policies.

The by-laws of defendant were made part of the policies by their express terms. As to the mode of ascertaining the amount of losses, the by-laws provided that the agent or officer of the company present to adjust, and the insured, shall endeavor to agree upon the

amount of the loss, and if they are unable to agree the insured shall deposit with such agent or officer $10 in cash to pay the expenses of an appraisement; and the said agent or officer shall thereupon appoint three disinterested persons. The three so appointed shall immediately repair to the field where the damage or loss occurred. They then provide how the three persons shall proceed. There was evidence that the defendant appointed three appraisers, who, as to two of the policies, appraised the damages at nothing. It is claimed that this appraisal bars a recovery upon those two policies. While we might be obliged to sustain so peculiar a provision for ascertaining the damages as these by-laws contain, it certainly could not be favored. It practically put the whole thing, in case the parties do not agree on the damages, in the hands of the company. Such a provision must be strictly construed. It contemplates that the appointment of appraisers shall be made at once upon a disagreement, and in the presence of the insured, or at least with notice to him of the appointment, and of the time when the appraisers are to make their examination. From the evidence the jury might have found that the appointment and appraisal were without the knowledge of the insured, and if they did so find the appraisal was not binding.

There was competent and sufficient evidence in the affidavit of the defendant's president, made in its behalf in this action, that Allen was its adjuster of losses. It was therefore proper to prove what passed between plaintiff and him.

Order affirmed.