GEORGIA HOME INS. CO. v. ROSENFIELD et al.

(Circuit Court of Appeals, Sixth Circuit. June 6, 1899.)

No. 663.

1. INSURANCE—AVOIDANCE OF POLICY FOR OVERINSURANCE—TENDERING BACK PREMIUM.

An insurance company, which first learns after a loss has been sustained and a claim made under its policy that the property was overinsured at the time the policy was issued, in violation of its provisions, and which at once, in express terms, denies liability on that ground, is not precluded from making such defense to an action on the policy merely because it did not tender back the premium paid.[1]

2. SAME—CONSTRUCTION AND EFFECT OF PROVISION AGAINST OTHER INSURANCE.

The effect of a clause in an insurance policy providing that the policy shall be void if other insurance is procured without the consent of the insurer is to terminate, and not merely suspend, the policy on the procuring of other insurance, contrary to such provision, and it is not revived without the consent of the insurer, although the additional insurance expires before any loss.

3. SAME—WAIVER.

The action of an insurance company, in requiring proofs of a loss or treating for its settlement, is not a waiver of any defense to the policy of which it had no knowledge at the time, nor can any estoppel as to such defense be predicated on such action.[2]

In Error to the Circuit Court of the United States for the Middle District of Tennessee.

Wm. M. Daniel, for plaintiff in error.

H. M. Leech, for defendants in error.

[1] As to waiver of forfeiture by retention of premiums, see note to Clearing Co. v. Bullock, 33 C. C. A. 369.

[2] As to waiver of condition against other insurance, see note to Insurance Co. v. Thomas, 27 C. C. A. 46.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

LURTON, Circuit Judge. This is an action upon two policies of fire insurance upon a stock of merchandise. During the currency of both policies a fire occurred, and the goods insured were destroyed. The insurer denied liability, and suits were brought upon each policy. The two suits were tried together, and judgment recovered by the defendants in error for 65 per cent. of each policy. The insurance company has sued out this writ of error.

Both policies were issued by the plaintiff in error, the Georgia Home Insurance Company. Each is for the sum of $2,500. The oldest was issued July 22, 1896, and the second bears date of August 14, 1896. Both were for the term of one year. Each policy contains a provision that the policy should be void "if there be any other insurance, whether valid or otherwise, on the property insured, or at any time during its continuance, without the consent of this company indorsed thereon." The amount of additional concurrent insurance permitted by indorsement on each policy, without notice, was $42,500.

The principal defenses relied upon in the errors assigned and argued are: First, that the policies were vitiated by overinsurance existing at the time they were taken out; second, that the first policy became void, if it ever attached, by obtaining additional overinsurance after its issuance, and before the date of the second policy issued by the plaintiff in error.

The undisputed facts bearing upon these defenses were these: (1) That when the policy of July 22, 1896, was issued, there existed other valid insurance, aggregating $43,500, which was $1,000 in excess of the other insurance permitted by indorsement upon that policy. This fact was unknown to the insurer, and not discovered until after loss had accrued and the claim had been made for indemnity. (2) This overinsurance was increased by an additional short-term policy for three months for $3,000. This increase was unknown to the insurer, and was not discovered until disclosed by the insured just before or during the course of the trial below. This short-term policy had expired before loss, and had not been renewed when the fire occurred. (3) There was overinsurance to the extent of $4,000 existing at the time of the issuance of the second policy, dated August 14, 1896. But this fact was not disclosed to the insurer, and was discovered only after the loss, as stated above.

The insured sought a recovery notwithstanding the existence of overinsurance at the time of the inception of each contract, upon the ground that the insurance company had not returned or offered to return the premium received when advised of the facts, and had thereby elected to treat the policies as valid. A recovery was also insisted upon, notwithstanding excess in insurance existing when the policies were issued, or obtained during their currency, upon the ground that the insurance company had by its conduct waived the effect of overinsurance as a defense, and elected to treat both policies as valid. The court instructed the jury that, when the fact

of overinsurance existing at the time of issuance of policies was discovered, it was the duty of the insurance company to return the premiums received or offer to do so; that the failure to so return the premiums received was fatal to the defense, so far as it depended upon the fact of overinsurance at date of the contracts in suit; and that such defense was therefore not open to the defendant, and might be put "out of consideration in respect to both policies." This portion of the charge was duly excepted to, and is now assigned as error. This was, in effect, a direction to find for the insured upon the second policy, inasmuch as no additional insurance was obtained during the currency thereof, and left open only the question of the effect of additional overinsurance during the currency of the first policy.

That the insurer may duly estimate the risk which he assumes, it is of the highest importance that he shall know the amount of insurance upon the particular subject-matter of the risk. It is a matter of common knowledge that insurance companies rely more upon the interest of the insured in the property than in the character of the owner as a protection against carelessness or fraud. It is therefore most reasonable that insurers against fire should take care that the property is so far uncovered by insurance as to make it for the interest of the owner that it should not be destroyed. The provisions in fire policies intended to secure the underwriter against overinsurance are, therefore, not regarded with the jealousy usual where clauses of forfeiture are not based upon such reasonable grounds. Compliance with the terms and conditions of the policy is a condition precedent to recovery. If the insured had other insurance, in excess of the amount of other insurance expressly stipulated for, the contract has been violated, and, unless the insurer has waived this important term of the policy, there can be no recovery. "It is enough," said Justice Jackson, in speaking for the supreme court in Imperial Fire Ins. Co. v. Coos Co., 151 U. S. 452–462, 14 Sup. Ct. 379, 381, "that the parties have made certain terms and conditions on which their contract shall continue or terminate. The courts may not make contracts for the parties. Their function and duty consists simply in enforcing and carrying out the one actually made."

Knowledge of the existence of such overinsurance did not come to the insurer until after the loss had occurred, and, in respect to much the larger part of the overinsurance, not until disclosed by the insured upon the trial below. Did the fact that the insurer made no offer to return the premiums received when overinsurance was discovered operate as an election to confirm the contracts and as a waiver of the right to rely upon the fact of overinsurance as a defense? The learned trial judge regarded such overinsurance as making the policies void ab initio, and that there was therefore no consideration for the premium paid, the policy having never attached. From this premise he drew the conclusion that the retention of the premium was inconsistent with the defense interposed. There was evidence tending to show that, when the claim was made under the policy, the insurer denied liability upon this as well as upon other grounds. This necessitated suit. The defense included nonliability because of the fact of overinsurance existing at date of policies, and

was the principal issue presented by the pleadings. Yet it was held that this defense was cut off because the premium had not been returned. To support this position, counsel for defendant in error cite Schreiber v. Insurance Co., 43 Minn. 367, 45 N. W. 708; Baker v. Insurance Co., 77 Fed. 550; Association v. Riel (Pa. Sup.) 17 Atl. 36; Jones v. Insurance Co., 90 Tenn. 604, 18 S. W. 260; Fishbeck v. Insurance Co., 54 Cal. 427; Harris v. Society, 64 N. Y. 196.

The case of Schreiber v. Insurance Co., reported in 43 Minn. 367, 45 N. W. 708, is the only one of these cases which can be said to broadly support the charge of the court that the mere retention of the premium is sufficient evidence of an election to treat the policy as valid. Gilfillan, C. J., in announcing the opinion of the court, said: "We find no case exactly like this. There are some which seem to intimate that, before electing to wholly avoid the policy, the insurer must return the premium, even voluntarily paid." He cites Fishbeck v. Insurance Co., 54 Cal. 422; Harris v. Society, 64 N. Y. 196; Association v. Riel (Pa. Sup.) 17 Atl. 36.

In Fishbeck v. Insurance Co., cited above, the facts were that, with full knowledge of the existence of overinsurance, an adjustment of a loss was made, whereby the loss was apportioned among several companies, and settlement made with the other companies according to the adjustment, the Phœnix Company agreeing to pay its proportion. That portion of the premium not earned at time of the loss was paid back, the company retaining the proportion earned up to the time of loss. After all this, the company refused to pay. The court held that under the facts it was estopped. Here there was every element of estoppel,—an adjustment by which the total loss was proportioned among several companies, and the pro rata thus ascertained paid and accepted upon the basis of the adjustment, without any assertion of an intent to rely upon the defense of overinsurance. The settlement with other insurers upon a basis which apportioned a part of the loss to the Phœnix Company, coupled with a return of a part of the premium and a promise to pay according to the adjustment, made a clear case of waiver or estoppel. The case is not an authority in support of the view of the circuit court.

Association v. Riel (Pa. Sup.) 17 Atl. 36, has not been included in the official reports of Pennsylvania, and is not accessible. Failure to report it officially operates to discredit the case.

Harris v. Society, 64 N. Y. 196, does not decide the point. A life policy which had lapsed for nonpayment of dues was reinstated, upon payment of dues, upon false and fraudulent representations as to the health of the assured, who died within a week. The company denied liability, and was sued. The defense was fraud in the reinstatement of the policy, with an offer to let judgment go for the premium paid at time of reinstatement. A recovery was insisted upon, on the ground that, "where a party seeks to disaffirm a contract upon the ground of fraud, he is bound to act promptly upon the discovery of the fraud, and to return, or to offer to return, all that he has received under the contract." The New York court of appeals waived a consideration of the applicability of this rule to a suit brought to recover upon the policy, and held

that the offer to permit judgment for the premium was a sufficient answer to the objection that the premium had not been paid back.

Baker v. Insurance Co., 77 Fed. 550, was an action upon a policy of life insurance. The defense was a breach of warranty in respect to untrue statements as to the health of the assured. Judge Shiras, district judge, held that there had been, upon the special facts of the case, a waiver of the right to avoid the policy upon this ground. The facts constituting this waiver were that for a full year after the death of the assured, and after learning of all facts, the company treated the policy as valid, and required the widow, who was one of the beneficiaries, to qualify as guardian for her minor children, who were also beneficiaries, and suffered her to sue without once repudiating the policy upon the ground set up in the defense. This delay and conduct so inconsistent with the defense was held to be evidence of an intent to waive the right to avoid the policy.

Jones v. Insurance Co., 90 Tenn. 604, 18 S. W. 260, was a suit by the insured to recover the premium paid upon a policy of fire insurance, upon the ground that the policy had never attached and no risk had been incurred. It is inferable that a former action upon the policy had failed upon the ground of misrepresentations as to the situation of the property insured, affecting the character of the risk.

The question here presented, and now under consideration, is whether an insurer may in express terms deny liability for over-insurance, existing at date of contract, which did not come to his knowledge until after the loss had been sustained and claim made under the policy, without tendering back the premium received upon learning the facts. This question, as presented by the assignment of error now under consideration, is not complicated with any other acts tending to show an intent to confirm and ratify the contract, inasmuch as the trial judge instructed the jury, in unambiguous terms, that the defense could not be made if the premium had not been tendered back to the insured. The case of Insurance Co. v. Smith (decided by this court at the present term) 92 Fed. 503, was a case involving the same question. Upon this subject we said:

"The objection that no defense going to the original invalidity of the contract can be made, without tendering back any premium received, remains to be considered. This is not a suit by the company for the cancellation of the policy, but is an action by the beneficiary based upon it as a valid contract. The general rule is that, if a risk never attaches under a policy, the premium is not earned, and, if paid, may be recovered, unless the insured has been guilty of fraud. Jones v. Insurance Co., 90 Tenn. 604, 18 S. W. 260; May, Ins. (1st Ed.) § 4. But we know of no rule which prohibits the defense here made except upon condition of a previous tender of the premium paid."

It is true that the decision of the case did not turn upon the absolute necessity of a previous tender, inasmuch as the court found that there had been an unequivocal repudiation of liability before the death of the assured upon the ground of breach of warranty, and that during the trial a tender back of the premium had been made and rejected. This we held was a sufficient offer to re-

pay the premium, if the repayment could have been legally demanded. An action by the assured to recover a premium paid, where the policy never attached and where no risk was run, will not lie when the contract was procured through the active fraud of the insured. This is well settled. Insurance Co. v. Smith, cited above; May, Ins. (1st Ed.) §§ 4, 567; Hoyt v. Gilman, 8 Mass. 335; Lewis v. Insurance Co., 39 Conn. 100; Friesmuth v. Insurance Co., 10 Cush. 537. So, if the risk attached and the policy became void subsequently through the conduct of the insured, no part of the premium can be recovered. Fulton v. Insurance Co., 7 Ohio, 289; Insurance Co. v. Clapp, 11 Pick. 56; May, Ins. (1st Ed.) § 567.

If a policy be void ab initio,—that is, if the risk never attached and the insurer was at no time subject to liability, and the contract was not against law or public morals,—the insurer may recover back all the premiums he may have paid, provided there was no fraud upon the part of the insured. Jones v. Insurance Co., 90 Tenn. 604, 18 S. W. 260; Foster v. Insurance Co., 11 Pick. 85; Tyree v. Fletcher, Cowp. 668; Richards v. Insurance Co., 3 Johns. 307; Feise v. Parkinson, 4 Taunt. 641; Clark v. Insurance Co., 2 Woodb. & M. 472, Fed. Cas. No. 2,829. It must be returned though there was "neglect, and even fault," by the assured. Stevenson v. Snow, 3 Burrows, 1240. Premiums recoverable by the insured, because no risk was run, may be recovered either in a direct action for them alone, or on a count for money had and received, coupled with a count on the policy for the loss. May, Ins. (1st Ed.) § 567. In Clark v. Insurance Co., cited above, the action was assumpsit upon the policy for the loss. The defense was a breach of warranty as to the character of the premises. There was a count for money had and received, and under this Justice Woodbury permitted a recovery for the premiums, but sustained the defense going to the original validity of the contract, although it does not appear that there had been a tender of the premiums. In Richards v. Insurance Co., 3 Johns. 307, the action was assumpsit upon the policy. The court found that the policy had never attached, but directed a verdict for the premium only. In Foster v. Insurance Co., 11 Pick. 85-89, the action was by several joint owners upon a policy taken out by one for the benefit of all. The court found that there was no authority by one joint owner to obtain insurance for the others and no ratification. It was therefore held that the policy had never attached except as to the interest of one, but directed a verdict for the interest of that owner and for the premiums paid upon other interests.

There is a strong analogy where a release is pleaded to an action for damages. In such cases, it has been held that the release may be avoided at law if obtained by fraud, and that it is not necessary to show a tender back of the money received before suit, and that the proper practice is to direct the jury to deduct from any recovery for the plaintiff the money so received by him. Railway Co. v. Harris, 158 U. S. 326-333, 15 Sup. Ct. 843; Lumley v. Railroad Co., 43 U. S. App. 476-489, 22 C. C. A. 60, and 76 Fed. 66; Mullen v. Railroad Co., 127 Mass. 86; Railroad Co. v. Doyle, 18 Kan. 58.

In the case before us, there was evidence that the plaintiff in error denied all liability so soon as the fact of overinsurance was learned. If this fact of overinsurance was fraudulently concealed from the insurer, the latter would not be entitled to recover back the premium they had paid. In Lewis v. Insurance Co., 39 Conn. 100, the action was to recover premiums paid upon a life policy which never attached, on account of false representations as to the insurable interest of the beneficiary in the life of the assured. Relief was denied upon the ground that the risk assumed, through the conduct of the beneficiary and the expense and inconvenience of discovering and canceling the contract or of defending a suit upon the policy, was a sufficient consideration for the premiums paid. In Hoyt v. Gilman, 8 Mass. 335–339, a recovery of the premiums paid was disallowed upon the ground that the assured had fraudulently concealed facts material to the risk, thereby rendering the insurance void.

Why should the insurer be regarded as having elected to regard the policy as in force, in the teeth of his denial of liability upon the ground of overinsurance, simply because he also denied his liability to the insured for the premium received? If the insured had fraudulently broken his warranty as to other insurance, he could neither recover upon the policy nor upon any implied promise to repay the premium received. The analogy between a suit for rescission upon the ground of fraud and reliance upon fraud as a defense, when it is sought to enforce a contract void for fraud, is not perfect. Here the contract itself provides that the policy shall be void and nonenforceable if other insurance existed not permitted by indorsement upon the policy. To recover, the plaintiff must bring himself within the terms of the obligation. Can he do this by simply showing that the defendant had retained the premiums paid? Manifestly not, for the defendant was entitled to retain the premiums unless the plaintiff can show that he was guilty of no intentional concealment and no purposed misrepresentation. But, if he do this, the utmost he can in justice demand is that his premium shall be returned. We are not now considering the effect of retaining the premium in connection with other facts tending to support an estoppel. We are considering alone the effect of retaining the premium while denying liability. The suit is not one for the cancellation of the policy. The defendant stands simply upon the terms of the agreement, and denies that the plaintiff has brought himself within the obligation of the contract. The justice of the case is that the premium shall be returned if the plaintiff has been guilty of no fraud, but we know of no principle which requires the insurer to elect between the premium he has received and liability upon the policy. The action was, in substance, one of assumpsit. The payment of premium was averred, and its amount stated. If the risk never attached, and the plaintiff was free from fraud, there was no difficulty in directing a verdict for the premium paid. This would have met the justice of the case, and been in accord with the practice, as shown by the cases cited above.

The case of Blaeser v. Insurance Co., 37 Wis. 31–39, is a well-

reasoned case, and meets our approval. The opinion was by Justice Cole. The action was upon a policy of fire insurance. One of the defenses was fraudulent misrepresentations in the application. There had been no offer to return the premium received. The trial judge ruled "that, although there might be misrepresentations in the application, yet the company could not avail itself of them, in an action upon the policy, without first tendering back to the insured the amount of the premium paid." This instruction the supreme court held erroneous, saying:

"The learned circuit judge held upon this point that the rule in regard to the rescission of contracts for fraud was applicable; that, when a party seeks to avoid a contract on that ground, he must put the other party to the contract back to the condition in which he stood prior to the transaction. This is undoubtedly a well-settled rule in regard to the rescission of contracts; but we think it has no application to the case before us, and for this reason: by the condition of the policy itself, any fraudulent misrepresentations of a fact material to the risk avoids the contract. It is not necessary that the company refund the premium in order to avail itself of this stipulation in the policy. The representations in the application constitute the basis upon which the risk is taken, and the policy declares that if there is any misrepresentation or concealment the insurance shall be void and of no effect. The company enters into the contract relying upon the truth of the representations, and, if it has been misled or deceived upon matters material to the risk, it may well say that no contract was ever made; that there was no concurrence of assent upon the same facts. In this case the insured declared that the several representations made in the application by way of answer to the questions asked were 'made warranties,' by which he was bound; and we know of no case which holds that if the property is not as warranted, or there are fraudulent representations in a matter material to the risk, the company cannot avail itself of that defense unless it first tender back to the insured the premium paid. In Campbell v. Insurance Co., 98 Mass. 381, Justice Wells says: 'Representations to insurers, before or at the time of making a contract, are a presentation of the elements upon which to estimate the risk proposed to be assumed. They are the basis of the contract; its foundation, on the faith of which it is entered into. If wrongly presented in any respect material to the risk, the policy that may be issued thereupon will not take effect. To enforce it would be to apply the insurance to a risk that was never presented.' These remarks are sufficient to show that the position of the defendant in attempting to defeat the action on the ground that fraudulent representations were made in the application is essentially different from that held by a party who seeks to rescind a contract on the ground of fraud. The two cases are not to be confounded, as they seem to have been by the court below."

Even where the rule has application, that he who seeks to disaffirm a contract upon the ground of fraud must act promptly upon the discovery of the fraud, and return, or offer to return, what he has received under the contract, anything which substantially places the other party in as good condition as that in which he was before the agreement was made has been regarded as a sufficient compliance with the general rule. Thus, in Allerton v. Allerton, 50 N. Y. 670, the court held that, if the judgment asked for will accomplish that result, no previous offer to return that which was received will be necessary. And in Harris v. Society, 64 N. Y. 196, a mere offer to permit judgment to go for the premium was held sufficient.

It was error to instruct the jury that the mere fact that there had been no tender back of the premium received would operate

to prevent the plaintiff in error from relying upon the fact of over-insurance existing at date of the policy.

The trial judge submitted to the jury the question as to whether there had been a waiver of the consequences of additional excess insurance taken out between the insurance of the first and second policies by the plaintiff in error. The undisputed fact was that after the policy of July 22, 1896, had issued, and before the policy of August 14, 1896, the defendants took out what is termed a "short-term policy" in another company, which ran for three months, and expired November 23, 1896, several weeks before the loss occurred for which indemnity is here sought. This additional insurance made an excess of $4,000 over that permitted by the indorsement upon the first policy and the same excess over that permitted by the second. During its existence, this short-term policy operated to change the basis upon which the contract rested, for it increased the risk just to the extent that it diminished the interest of the insured in protecting the subject-matter of the contract against destruction by fire. It was a risk which the insurer did not agree to assume, and for which no premium was paid. It was "other insurance" during continuance of the policy, and was therefore in violation of the contract, and, by the plain terms of the agreement, avoided the policy. That such additional insurance had expired before the loss is of no significance, under the well-settled principles of the case of Imperial Fire Ins. Co. v. Coos Co., 151 U. S. 452, 14 Sup. Ct. 379, where it was held that the clause avoiding a policy "if mechanics are employed in building, altering, or repairing the premises," without notice to and consent of the insurer, was not dependent upon any actual increase of the risk nor upon the operation of the risk at time of the loss. The principle of that case is not to be reconciled with the doctrine which seems to have the approval of Mr. May, at section 101 of his work upon Fire Insurance (3d Ed.), that the violation of such "other-insurance" clause or other like condition would only suspend the policy during the violation. The cases of Insurance Co. v. Schettler, 38 Ill. 166, and Obermeyer v. Insurance Co., 43 Mo. 573, support the view of Mr. May. But the true doctrine, as it seems to us, is that the policy, by its very terms, was terminated by the happening of the condition upon which it was to become void, and it could not be revived without the consent of the insurer, after knowledge of the fact. This is the doctrine plainly announced in the case of Imperial Fire Ins. Co. v. Coos Co., cited above, and is the rule fully supported by Fabyan v. Insurance Co., 33 N. H. 203, 207; Moore v. Insurance Co., 62 N. H. 240; Kyte v. Assurance Co., 149 Mass. 116–122, 21 N. E. 361; and Ferree v. Trust Co., 67 Pa. St. 373,—all of which cases are cited and approved in Imperial Fire Ins. Co. v. Coos Co., cited heretofore.

Although it was not disputed that the insurer first learned of this excess insurance taken during the currency of the first policy just before or during the trial of the case below, yet it was contended that the plaintiff in error waived the right to treat the policy as void by its conduct in investigating the fire, calling for proof

·of loss, and treating for a settlement, all of which occurred long before the insurer learned of this overinsurance.  After charging the jury that if, during the continuance of the policy, there was taken other and additional insurance in excess of the amount of other insurance permitted, this fact would render the contract void, "unless the plaintiff can make good his contention that the defendant has waived that forfeiture by its course of dealing after the facts became known to the defendant," the court, among other things, instructed the jury:

"If the company determined to waive, why it was bound by that, if the plaintiff acted on it in changing his course of conduct, such as furnishing proofs of loss, the turning over of his books for examination, outside of such as was done under this waiver agreement; that is, if he had been led to believe that defendant was not insisting on such a right, and if at the time they went there the assured turned over his policies and books, and Mr. Kimball took any interest in them, and made an examination, as the others, this would be a circumstance tending to show, and which would warrant you in finding, that there was a waiver of this forfeiture; because forfeitures are not favored by the law, and the company may waive, if it chooses to do so, the hardship of a forfeiture, but it is not required to do so,—it is only when it intends to do so, as evidenced by its conduct."

The context shows that this conduct of the plaintiff in error, referred to by the learned judge, was prior to any knowledge of the fact of overinsurance acquired during the continuance of the policy. As the consequence of overinsurance existing at the date of issuance of both policies, and rendering them void ab initio, had been already disposed of, by a positive instruction that any forfeiture on that account was waived by failure to tender back the premium received, there remained nothing for consideration except the question of forfeiture by reason of additional overinsurance during the continuance of the first policy.  This charge utterly ignored the fact that in the absence of knowledge of that ground of forfeiture there could be no waiver which would prevent the assertion of the forfeiture when discovered.  There is nothing in the charge which cures this error.  To meet it the plaintiff in error requested the following:

"If you find that the defendant did not know of the $3,000 short-term insurance until after all negotiations, examinations, and letters produced in the proof, and that the defendant did not in fact know of said $3,000 overinsurance until within a few days of this trial and after all negotiations had ceased, then these examinations, etc., would be no waiver of the overinsurance as to this $3,000."

This was denied.  This was error.  There can be neither an estoppel nor a waiver by conduct antecedent to full knowledge of the facts rendering the policy void.  May, Ins. (1st Ed.) § 506;  Robertson v. Insurance Co., 88 N. Y. 541.  "A waiver of a stipulation in an agreement must, to be effectual, not only be made intentionally, but with knowledge of the circumstances.  This is the rule where there is a direct and precise agreement to waive the stipulation.  A fortiori is this the rule where there is no agreement, either verbal or in writing, to waive the stipulation, but where it is sought to deduce a waiver from the conduct of the party.  Thus, where a written agreement exists, and one of the parties sets up

an arrangement of a different nature, alleging conduct on the other side amounting to a substitution of this arrangement, he must clearly show, not merely his own understanding, but that the other party had the same understanding. Darnley v. Railroad Co., L. R. 2 H. L. 43." Bennecke v. Insurance Co., 105 U. S. 355–359.

Other errors have been assigned, but, as they have not been discussed in the briefs or pressed in argument, we deem it unnecessary to consider them, inasmuch as that which has been decided will demand a reversal and a new trial. It is accordingly ordered that the judgment be reversed, and the cause remanded for a new trial.