## NO INSURABLE INTEREST IN A BROTHER.

[Circuit Court of Cuyahoga County.]

FRANK NEWMORE V. THE WESTERN & SOUTHERN LIFE INSUR-
ANCE COMPANY.

Decided, June 15, 1906.

*Life Insurance—Wagering Contracts—Insurable Interest—Relationship
of Brother not Sufficient to Support a Policy.*

The word "stranger" as used in 50 O. S., 601, having reference to in-
surable interest, includes a brother; and a policy of insurance taken
out on the life of a brother who is in good health, is younger than
the assured, does not depend upon him, and has no knowledge of
the issuance of the policy, is not saved from the inhibition as to
wagering contracts by the allegation that the purpose in taking out
the policy was to provide a fund for the burial of the insured in
case of his death.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

Error to the court of common pleas.

In this case the court of common pleas sustained a general
demurrer to the petition, and the plaintiff not desiring to plead
further, judgment was entered that the petition be dismissed
at the costs of the plaintiff. To this order and judgment error
is prosecuted here, and we have then the question, whether the
allegations of the petitions are such, all being true, as to entitle
the plaintiff to any relief. The material allegations of the peti-
tion read as follows:

"For his first cause of action against defendant, plaintiff says
that on or about the 11th day of October, 1904, at the city of
Cleveland, in said state, one H. Stoner, then and there being a
duly authorized and acting agent of defendant, solicited plaint-
iff's wife to take out a policy of insurance upon the life of
Peter Newmore, a brother of plaintiff; that plaintiff's said wife
then and there acting for and on behalf of plaintiff, and being
authorized by plaintiff so to act in the premises, consented to
take out a policy of insurance from defendant upon the life
of said Peter Newmore, and then and there gave to said Stoner
the street address at which the said Peter Newmore could be
found; that at the same time and place said Stoner produced

an application blank to plaintiff's wife and pretended to fill out the same, pursuant to questions propounded to and answered by plaintiff's said wife, but that said agent without the knowledge or consent of plaintiff or his said wife, erroneously named as beneficiary in said application one Kate Newmore, whose relationship is stated to be that of a daughter, and whose age is stated to be ten years, whereas the directions given by plaintiff's wife on said occasion, she then and there acting for and on behalf of plaintiff, and being duly authorized to act in the premises, were to name as beneficiary in said application the plaintiff herein, whose relationship was given as that of a brother and whose age was given as thirty-three years; that said Peter Newmore had no daughter nor was there existing any such person as Kate Newmore, aged ten years, as stated in said application.

"Plaintiff further says that said Stoner having procured the foregoing information as to the beneficiary, agreed to seek out said Peter Newmore and make a personal examination of him and procure from him the remaining information made necessary by said application; that on or about the 24th day of October, 1904, the defendant delivered to plaintiff its policy No. 1119071 upon the life of said Peter Newmore, the premium upon said policy being $5.20 per year, payable weekly, the payment of such sum being the consideration upon which said policy was issued, and said sum having been paid by plaintiff regularly from and after the issuance of said policy, and such payment being made through his wife acting as his agent as hereinbefore stated.

"Plaintiff says that the errors appearing in said application were and are due to the mistake and fraudulent conduct of the company's said agent; that at the time said application was made, the said Peter Newmore was indigent and plaintiff desired, solely by reason of his relationship to him, to provide for his proper interment in the event of his death, and that plaintiff had an insurable interest in the life of said Peter Newmore.

"Plaintiff further says that question eleven of said application required an answer as to the fact of said Peter Newmore's being insured in the defendant company or in other companies, together with the names, amounts, and numbers of the policies in said companies; that the answer to said question eleven as it appears in said application, was that said Peter Newmore was not insured in the defendant company or in any other company or companies, whereas there was upon the date of said application an existing policy upon the life of said Peter Newmore in the sum of $550, payable to the wife of the insured;

that neither plaintiff nor his said wife acting as his agent, had any knowledge whatever of the existence of said policy, and plaintiff avers that the said answer to question eleven in said application was, through the fault and negligence of said Stoner acting as agent for and on behalf of the said company, erroneously and incorrectly written in said application, and that defendant would have obtained the information required by the ninth paragraph of the condition of said policy were it not for the fault, neglect, and mistake of its own agent in procuring said policy; that if said agent had correctly written the answer to said question eleven, and had made proper inquiry and investigation as he undertook to do, plaintiff would have had the opportunity to procure upon said previous policy the endorsement required by said ninth paragraph of the conditions of said policy, and which plaintiff did not procure.''

It then goes on to aver that the premiums were paid by the wife of the plaintiff acting as his agent, and that Peter Newmore, the insured, died, and the plaintiff seeks a reformation of the contract, and that he have judgment against the insurance company for the amount named in the policy.

It will be noticed that no allegation is made that the insured ever knew of the issuance of this policy. It was taken out by the plaintiff, on his own application, the premiums were all paid by him, and the benefits, if the policy had been written as the petition says it should have been, were all to come to him. The relationship between the insured and the beneficiary was that of brothers. There was no dependence in any way of one upon the other. The amount for which the policy was taken was small, being but for $112, and it is alleged that the insured was indigent, and the plaintiff wished to provide funds in this way for the proper funeral expenses of the insured when he should die.

It is, however, further alleged that the insured already had a policy in this same company for $550, payable to his wife. True, it is said that this was unknown to the plaintiff and to his wife, who acted as his agent in all matters relating to this policy, but surely a very little effort on the part of the plaintiff or his agent would have obtained this information for them, and they would have been relieved of any anxiety about the funeral expenses.

There is nothing in the petition to indicate that the insured was likely to die before the plaintiff. He was but thirty-six years old and in good health when the policy was issued.

There was nothing, then, to relieve this from the obnoxious features spoken of in the books as "a wagering contract" except the relationship between the parties.

In *Ryan* v. *Rothmuiler et al,* 50 O. S., 601, Judge Burket quotes with approval the following language from May on Insurance:

"While a man may cause his own life to be insured for the benefit of a stranger, and the want of insurable interest in the stranger will not invalidate the policy, a policy taken out by a man for his own benefit on the life of a stranger would be void for want of insurable interest."

This proposition is thoroughly settled, but the question still remains whether, in the sense in which the word "stranger" is used in this proposition, it includes a brother as such.

In *Lewis* v. *Phoenix Mutual Life Insurance Co.,* 39 Conn., 100, it is said in the syllabus, "that the mere relationship between the plaintiff (the beneficiary) and L (the insured) was not such an interest as would support the policy." The relationship spoken of was that of brothers. In the same case, at page 104 of the opinion, it is said:

"We think it a correct legal proposition that the mere relationship of a brother is not such an interest as will support a policy of life insurance."

In Bliss on Life Insurance there is a very full discussion of what constitutes an insurable interest in the life of another, beginning with Section 20 and ending with Section 31. The heading of the last named section is "General Conclusions," and the following language is used:

"* * * with reference to the insurable interest arising or implied from relationship, the corerct view would seem to be that an insurable interest will be held to exist where the relationship is such that the assured has a legal claim upon the insured for services, or for support, or where, though such legal claim does not exist, yet from the past personal relations of the two, and the treatment of the assured by the insured, or possi-

bly his declared intentions, the assured has a reasonable right to expect some pecuniary advantage from the continuance of the life of the insured, or to fear loss from his death.    On this principle a father would have an insurable interest in the life of his child, whether a minor or of full age, and the child in the life of his father.    So would a wife in the life of her husband, and a husband in the life of his wife.    But a brother or sister would not have such interest in each other, nor a nephew in an uncle, unless some facts outside of the mere relationship are shown, though those facts might be very slight.''

In *Conn. Mutual Life Insurance Co.* v. *Schaefer,* 94 U. S., 457, the court, on page 461, cites these sections of Bliss, as well as Sections 102 to 111 of May on Insurance, which are to the same effect, and says that all the authorities of importance are collected and arranged in these works.    See especially Section 107*s*, May on Insurance.

We find nothing in the petition in this case, as has already been said, tending to show any insurable interest in the plaintiff in the life of the insured other than the mere fact that they were brothers, and this is not sufficient.    It follows that the demurrer to the petition was properly sustained, and the judgment is affirmed.

*Mathews & Orgill,* for plaintiff in error.

*C. L. Selzer,* for defendant in error.